# EXHIBIT 1

AB:RMP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

  - against -

PAUL BELLOISI,

  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

C O M P L A I N T

(21 U.S.C. § 963)

20-MJ-119

EASTERN DISTRICT OF NEW YORK, SS:

John M. Moloney, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, duly appointed according to law and acting as such.

On or about February 4, 2020, within the Eastern District of New York and elsewhere, the defendant PAUL BELLOISI, together with others, did knowingly and intentionally conspire to import into the United States from a place outside thereof a Schedule II controlled substance, to wit: approximately 11.594 kilograms of cocaine, contrary to Title 21, United States Code, Sections 952(a) and 960(a)(1).

(Title 21, United States Code, Section 963)

The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

1.      I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). I have participated in numerous investigations of narcotics smuggling and distribution involving international airports, and specifically the smuggling of controlled substances in and through John F. Kennedy Airport ("JFK"). I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; and from reports of other law enforcement officers involved in the investigation.

2.      On February 4, 2020, at approximately 3:36 p.m., American Airlines flight 1349 from Montego Bay, Jamaica arrived at JFK Terminal 8. Immediately thereafter, two Customs and Border Patrol ("CBP") officers who are members of the JFK Anti-Terrorism Contraband Enforcement Team began an enforcement exam of the aircraft, which includes, among other things, an inspection of external aircraft panels and the main avionics compartment, which is on the underside of the aircraft beneath and behind the cockpit. Upon searching the avionics compartment, Officer-1 discovered ten "bricks" of a substance that appeared to be cocaine concealed behind an insulation blanket on the port side of the compartment.

3.      Officer-1 and Officer-2 removed the suspected contraband and replaced it with "sham" bricks. They sprayed the sham bricks and insulation blanket that concealed them with a substance that glows when illuminated with certain light, and placed an electronic transponder that would send a radio signal if the area around the sham bricks was disturbed. The officers then left the aircraft, and along with HSI agents began visual surveillance of the underside of the aircraft from a distance.

4. For several hours, the officers observed no activity near the avionics compartment and the transponder was not tripped. The aircraft was scheduled to depart for its next flight at 8:00 p.m. Approximately 20 to 30 minutes before that scheduled departure, after the aircraft had already begun boarding the next flight, the officers observed an American Airlines mechanic entering the avionics compartment. The officers would learn that this mechanic was the defendant, PAUL BELLOISI.

5. Within 3-5 seconds after BELLOISI entered the compartment, the transponder was "tripped," sending a signal to the officers that the area around the sham bricks had been disturbed. Officer-1 and Officer-2, along with a supervisory CBP officer and an acting deputy chief, drove from the observation area to the aircraft. Officer-1 and Officer-2 approached the avionics compartment and observed BELLOISI re-adjusting and securing the insulation blanket that had formerly concealed the suspected contraband.

6. BELLOISI began to descend from the avionics compartment and the officers confronted him. The gloves that BELLOISI was wearing glowed when illuminated under a certain light, providing another indication to the officers that BELLOISI had touched or handled the area where suspected contraband had previously been concealed. The officers advised BELLOISI that he was being detained for questioning by HSI.

7. The officers observed that the "tug" vehicle that BELLOISI had driven to the aircraft, and which was parked near the avionics compartment, contained an empty red tool bag, pictured below, in plain view.



8.   I and another HSI special agent transported BELLOISI to the Joint Narcotics Smuggling Unit.   While there, BELLOISI removed his American Airlines jacket, and I subsequently observed that the inside lining of the jacket had been cut or sliced in the chest area on both sides, forming inside "pockets" in the interior lining of the jacket, as depicted in the photographs below.

5





9. In my training and experience, narcotics smugglers commonly make such cutouts to carry concealed contraband in the interior lining of coats and jackets. The

red tool bag and the interior jacket lining together would have been sufficient to carry the seized contraband.

10. The seized contraband was field tested with positive results for cocaine. The total quantity seized was 11.594 kilograms (25.560 pounds).

WHEREFORE, your deponent respectfully requests that the defendant PAUL BELLOISI be dealt with according to law.

John M. Moloney
Special Agent, United States Department of
Homeland Security, Homeland Security
Investigations

Sworn to before me this
5th day of February, 2020

THE HON        s/ Mann           IN
UNITED S                         GE
EASTERN