UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES OF AMERICA,                       :
                                                :
                                                :         **MEMORANDUM AND ORDER**
                       -against-                :         **20-cr-219 (DLI)**
                                                :
PAUL BELLOISI,                                  :
                                                :
                       Defendant.               :
------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

Defendant Paul Belloisi ("Defendant") is charged by indictment with conspiracy to possess cocaine with the intent to distribute in violation of 21 U.S.C. § 846 and § 841(b)(1)(A)(ii)(II); conspiracy to import cocaine in violation of 21 U.S.C. § 963 and § 960(b)(1)(B)(ii); and importation of cocaine in violation of 21 U.S.C. § 952(a), § 960(a)(1), and § 960(b)(1)(B)(ii). *See*, Indictment, Dkt. Entry No. 11.

Defendant moved to suppress statements and evidence obtained from his cellphone that he alleges were obtained in violation of his constitutional rights.[1] *See*, Def.'s Mot. to Suppress, Dkt. Entry No. 31; Def.'s Mem. of Law in Supp. of Mot. to Suppress ("Def. Mem."), Dkt. Entry No. 32. The Government opposed. *See*, Gov't. Opp'n., Dkt. Entry No. 34. Defendant replied, limiting his response to suppression of statements. *See*, Def. Reply, Dkt. Entry No. 35. The Court held oral argument on April 13, 2022 and ordered a hearing. *See*, Minute Entry dated April 13, 2022. The suppression hearing was held on May 25, 2022 and June 17, 2022 as to the admissibility of Defendant's statements and the validity of Defendant's consent to search his cellphone. *See*,

---

[1] Defendant also moved to compel the production of discovery. The Court addressed this request by Electronic Order. *See*, Electronic Order dated March 24, 2022.

Minute Entries dated May 25 and June 17, 2022; Hearing Transcripts ("Tr."), Dkt. Entry No. 54.[2] On July 29, 2022, Defendant filed a post-hearing brief. *See*, Def. Post-Hr'g Mem., Dkt. Entry No. 42. On August 12, 2022, the Government filed its opposition. *See*, Gov't Post-Hr'g Opp'n, Dkt. Entry No. 42. On August 26, 2022, Defendant filed his reply. *See*, Def. Post Hr'g Reply, Dkt. Entry 44. At a conference on September 22, 2022, the Court orally denied Defendant's motion to suppress in its entirety, with a written decision to follow. *See*, Minute Entry dated September 22, 2022. This Memorandum and Order sets forth the reasons for the denial of Defendant's motion to suppress in its entirety.

### I.     Findings of Credibility

At the suppression hearing, the Government presented, *inter alia*, testimony from Department of Homeland Security Investigations ("HSI") Special Agents John Moloney ("Moloney") and Sean Gabay ("Gabay") and Customs and Border Patrol ("CBP") Officer Michael Robinson ("Robinson"). The Court finds these witnesses credible.

Defendant did not testify at the suppression hearing or present any witnesses. Defendant attached to his motion an affidavit with his version of events. *See*, Undated Declaration of Paul Bryan Belloisi, Dkt. Entry No. 32-1. However, as Defendant did not testify and the credibility of the conclusory, self-serving statements in the affidavit could not be challenged, the Court does not consider it in deciding the instant motion.

### II.    Findings of Fact

On February 4, 2020, Robinson, who was assigned to target aircrafts to look for narcotics or other contraband, found ten bricks of cocaine[3] under an insulation blanket in the avionics

---

[2] At the time of the issuance of this Memorandum and Order, the Suppression Hearing Transcript for June 17, 2022 had not been filed on the Docket, but was accessible to the parties and the Court.

[3] The quantity seized was 11.594 kilograms or 25.560 pounds. *See*, Compl., ¶ 10.

compartment of an American Airlines aircraft. Tr. at 163:16-165:1; 165:14-17. Upon discovering the cocaine, Robinson and another CBP officer replaced it with sham narcotics, sprayed the sham narcotics with a substance that would glow under a black light, and set up a transponder that would set off alarm-like warnings if the sham narcotics were disturbed. *Id.* at 165:21-168:1. They then conducted surveillance of the aircraft from an unmarked vehicle. *Id.* at 168:2-23.

After about four hours, Robinson observed Defendant entering the avionics compartment. *Id.* at 168:24-170:14. Within ten seconds of entering, Defendant "tripped" the transponder, causing the alarm to go off. *Id.* at 168:24-169:16. Robinson drove to the aircraft, and, upon arriving, looked into the entry hatch and saw Defendant readjusting and resecuring the insulation blanket. *Id.* at 169:2-16.[4] Defendant then exited the aircraft and, upon seeing Robinson and his partner, Defendant said, "what's up, guys?" *Id.* at 190:18-22. When Robinson asked Defendant why he was in the avionics compartment, Defendant responded that he was resetting the air conditioning system as an alarm had gone off. *Id.* at 169:21-170:14, 190:23-191:3. Robinson's partner asked Defendant for his identification, which Defendant presented. *Id.* at 169:21-170:14, 191:24-192:2. Robinson shone the black light on Defendant's hands and gloves revealing small specks of the spray used on the sham narcotics packages on his hands and the palms of his gloves glowed, indicating that Defendant had touched the sham narcotics. *Id.* at 169:21-170:14, 198:19-22. At that point, Defendant no longer wished to answer Robinson's questions, but he did not ask for a lawyer. *Id.* at 170:15-21.

Separately, Gabay and Moloney had been informed that narcotics had been found on an aircraft and, after responding to the terminal and conferring with CBP, they also conducted

---

[4] Though Defendant disputes whether Robinson poked his head into the avionics compartment, this dispute has no bearing on any of the findings of fact because Robinson could see into the avionics aircraft from where he was standing. *See,* Def. Post-Hr'g Mem. at 6, 10; *See also*, Tr. at 206:10-15.

surveillance of the aircraft from a distance. *Id.* at 112:18-24, 21:20-22:1, 22:21-23:1, 23:11-15. They proceeded to the aircraft upon learning that someone had entered the avionics compartment, and, upon arriving, observed CBP officers speaking with Defendant. *Id.* at 23:16-24:4, 24:12-15, 25:11-24. To verify Defendant's assertion that he was in the avionics compartment to fix the air conditioner, Gabay and Moloney spoke to the plane's pilot, who told them there were no mechanical or air conditioner issues and any issues would have been documented in the plane's logbook, which they were not. *Id.* at 27:17-23; 28:8-12, 118:11-15.

After returning to the tarmac and speaking with CBP officers, Moloney brought Defendant to the front of their vehicle and explained that they were driving to the Joint Narcotics Smuggling Unit ("JNSU") office. *Id.* at 28:17-29:1. Moloney asked Defendant to turn away from the aircraft, advising Defendant that he was not in trouble and that they wanted to "get to the bottom of it, and "talk like gentlemen" in a quieter setting, rather than on the loud tarmac. *Id.* at 29:25-30:7, 76:23-77:6.

During the time he was on the tarmac, Defendant did not ask for a lawyer, was not handcuffed, and was not physically restrained in any way. *Id.* at 170:25- 171:11. Nor did any of the officers take their weapon out of its holster. *Id.* at 171:12-14. No one yelled at Defendant. *Id.* at 171:15-16. While Defendant was not free to leave, he was not under arrest. *Id.* at 26:15-25, 171:17-22. Moloney characterized the interactions on the tarmac "very calm and relaxed." *Id.* at 30:19-21. In transporting Defendant to the JNSU office, Defendant was handcuffed in accordance with protocol and was informed that the handcuffing was for transport only. *Id.* at 29:22-30:7. During the drive, Defendant did not ask to call an attorney. *Id.* at 82:16-17.

At the JNSU office, Moloney gave Defendant a cup of water and told him the interview would begin in a few minutes. *Id.* at 30:22-31:1. Defendant was not handcuffed or physically

4

restrained. *Id.* at 32:15-21. No one yelled at Defendant. *Id.* at 33:12-14. However, Defendant was not left alone in the interview room. *Id.* at 32:12-14.

About five to ten minutes after arriving at the JNSU office, Moloney read Defendant his *Miranda* rights from a Statement of Rights Form ("*Miranda* Form"). *Id.* at 33:17-34:2, 35:14-17, 83:8-13; *See also, Miranda* Form, Gov't Ex. 1, Dkt. Entry No. 43-4. After Moloney read aloud each statement, Defendant confirmed that he understood his rights. *Id.* at 35:18-22, 83:5-13; 86:4-11. Despite reusing to initial or sign the *Miranda* Form, Defendant agreed to speak with Moloney and Gabay without an attorney present, saying he had nothing to hide. *Id.* at 35:18-22, 83:17-24, 85:7-20. The interview lasted about two and a half hours, during which Moloney took contemporaneous notes. *Id.* at 91:2-7; 36:3-8; *See also*, Moloney's Notes Containing Defendant's Statement ("Defendant's Statement"), Gov't Ex. 2, Dkt. Entry No. 43-5. During the interview, Defendant stated that, while he had no legitimate reason to be on the aircraft, he went onboard to get something to eat and drink and then went to the avionics compartment to try to fix the plane's air conditioning. Tr. at 37:14-38:16. Defendant further stated that he had noticed an insulation blanket that did not appear "right" and, when he tried to fix it, he noticed something behind the blanket. *Id.* at 38:19-25. No CBP officers were present in the interview room nor did any CBP officers tell Moloney or Gabay what to ask. *Id.* at 130:9-12.

At approximately 11:00 PM, Defendant asked to speak with an attorney for the first time and questioning stopped. *Id.* at 39:18-25. Defendant was placed under arrest at 11:48 PM and lodged in a holding cell. *Id.* at 41:7-10, 96:13-17. At about 12:30 AM, Moloney asked Defendant for an emergency contact to include on arrest processing forms. *Id.* at 41:17-42:1. Defendant stated he did not have any phone numbers memorized and the numbers he had were in his cellphone. *Id.* at 92:9-14. Moloney and Gabay asked for consent to look through Defendant's

5

cellphone. *Id.* at 92:15-19. Moloney reviewed with Defendant a Consent to Search Form. *Id.* at 93:19-94:16; Consent to Search Form ("Search Form"), Gov't Ex. 3, Dkt. Entry No. 43-6. Defendant confirmed that he understood his rights and orally consented to the search, saying he had nothing to hide, but he refused to sign the form. *Id.* at 42:2-5; 95:13-19; Search Form. Moloney obtained the passcode to unlock Defendant's cellphone from Defendant. *Id.* at 92:15-93:1.

Ultimately, Moloney obtained a warrant to search Defendant's cellphone. *Id.* at 44:10-12; *See also,* Search Warrant ("Warrant"), Dkt. Entry No. 32-6. The Warrant was issued by the Honorable Robert M. Levy, United States Magistrate Judge. *See*, USA v. An Apple iPhone 8, 20-mj-00187 (RML). The Warrant contained an Affidavit by Moloney explaining the basis for probable cause. *See*, Affidavit, Dkt. Entry No. 32-6 at 5 -18. The Warrant also included a document entitled "Attachment A," which described the cellphone. *See*, Attachment A, Dkt. Entry No. 32-6 at 19. Finally, the Warrant included a document entitled "Attachment B," which lists ten categories of items to be seized by their relation to designated crimes. Attachment B, Dkt. Entry No. 32-6 at 20-21.

**III.   Conclusions of Law**

Defendant moves to suppress two categories of information: his statements and evidence seized from his cellphone. As to his statements, Defendant contends that the statements obtained on the tarmac should be suppressed because he did not receive *Miranda* warnings at that time. Def. Mem. at 12-13. Next, he contends that the statements obtained at the JNSU office should be suppressed because the statements were obtained without receiving *Miranda* warnings, after he invoked his right to counsel, and that, even if Miranda warnings were administered, the statements should still be suppressed as part of an improper two-step scheme. *Id.* at 13-16. *See also*, Def.

6

Post-Hr'g Mem. at 12-15. As to evidence from his cellphone, Defendant argues that the border search doctrine does not apply to this case. Def. Mem. at 18-19. The Government responded that it was not relying on the border doctrine to justify the cellphone search as it does not apply here. *See*, Govt. Opp'n. Defendant also contends that he did not consent to any search of his cellphone, which argument the Government contends is moot. *Id.* at 16-18; Gov't Opp'n at 6, fn. 6. Defendant also challenges the constitutionality of the Warrant. Def. Mem. at 19-25. In opposition, the Government contends that the Warrant was supported by probable cause and was sufficiently particularized, and that, in any event, the good faith exception to the exclusionary rule applies. Gov't Opp'n at 7-15. For the reasons set forth below, Court finds no merit to Defendant's arguments and his motion to suppress is denied in its entirety.

  **A.**  **Motion to Suppress Statements**

    **1.**  **Defendant's Statements on the Tarmac**

Pursuant to *Miranda v. Arizona*, "the prosecution may not use statements . . . stemming from custodial interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). "The ultimate inquiry for determining *Miranda* custody . . . is whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Familetti*, 878 F.3d 53, 60 (2d Cir. 2017) (quotations and citations omitted). This holistic inquiry takes into account the nature and context of the questions and the nature and degree of restraints placed on the defendant. *United States v. FNU LNU*, 653 F.3d 144, 154 (2d Cir. 2011) (citations omitted). A "temporary and relatively nonthreatening detention" involved in "a traffic stop or *Terry* stop does not constitute *Miranda* custody." *Howes v. Fields*, 565 U.S. 499, 510 (2012).

Here, the Court finds that Defendant was not in custody while on the tarmac. The encounter was a temporary and relatively nonthreatening detention supported by reasonable suspicion analogous to a *Terry* stop. Gov't Opp'n at 19-20; Gov't Post-Hr'g Opp'n at 8; Tr. 26:15-25. Evaluating the encounter holistically, Defendant was not at the complete mercy of the police nor was his detention on the tarmac of an international airport anything but temporary. Defendant was not handcuffed or physically restrained in any way. Tr. 171:6-11. No officer drew his weapon or yelled at Defendant. *Id.* at 171:12-16. Nor did Robinson speak with Defendant for a long time. *Id.* at 196:7-13. While Defendant was not free to leave, that factor alone is not sufficient to find a custodial detention under *Miranda*. *Maryland v. Shatzer*, 559 U.S. 98, 112 -13 (2010).

Defendant's contentions to the contrary are unavailing. Defendant argues that the amount of information in a report shows that an interrogation occurred on the tarmac. Def. Post-Hr'g Mem. at 9-10; Def. Post-Hr'g Reply at 1; Incident Report, 3500-JM-4, Dkt. Entry No. 43-7. The report referred to by Defendant was not introduced as evidence at the hearing and is not considered for purposes of deciding the instant motion. However, even assuming an interrogation occurred, the protections of *Miranda* were not triggered as Defendant was not in custody. *See*, *United States v. Bethea*, 191 F. Supp.3d 249, 258 (E.D.N.Y. 2016) ("[I]f a suspect is not in custody while being interrogated . . . the protections of *Miranda* are not triggered.") (citations omitted). Additionally, Defendant's feeble attempt to undercut Robinson's credibility is unavailing because where Robinson stood when Defendant was in the avionics compartment has no bearing on the question of whether Defendant was subjected to a custodial interrogation. Def Post-Hr'g Mem. at 10; Gov't Post-Hr'g Mem. at 11. Finally, the chronology of how certain reports were produced by the Government to the defense is totally irrelevant. *See*, Def. Post-Hr'g Reply at 2.

Accordingly, Defendant's statements to agents while at the tarmac are admissible.

### 2. Defendant's Statements Made at the JNSU Office

"A statement made by the accused 'during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused in fact knowingly and voluntarily waived *Miranda* rights when making the statement.'" *United States v. Alequin*, 792 F. App'x 859, 861-62 (2d. Cir. 2019) (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010)). In this context, "'knowing' means with full awareness of the nature of the right being abandoned and the consequences of abandoning it, and 'voluntary' means by deliberate choice free from intimidation, coercion, or deception. *United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014) (citation omitted). A "waiver need not have been express; 'courts can infer a waiver of *Miranda* rights from the actions and words of the person interrogated.'" *United States v. O'Brien*, 926 F.3d 57, 73 (2d Cir. 2019) (quoting *Berghuis*, 560 U.S. at 387). "[B]y proceeding to answer questions, a defendant can be found to have waived his *Miranda* rights despite his refusal to sign a waiver form." *United States v. Ashburn*, 76 F. Supp.3d 401, 440–41 (E.D.N.Y. 2014) (citing cases).

Here, the Court finds that Defendant waived his *Miranda* rights knowingly voluntarily and clearly indicated he was willing to speak with the agents police at the JNSU office. Moloney explained Defendant's rights to him prior to any questioning, using a standard rights form. *Id.* at 33:15-34:1, 83:8-13. Defendant confirmed that he understood his rights and agreed to speak without an attorney, saying he had nothing to hide. *Id.* at 35:14-22, 85:12-20. There is no evidence suggesting the agents engaged in any type of coercive action. Defendant's refusal to sign the form does not preclude a finding of waiver. *See*, *United States v. Figaro*, 568 F. Supp.3d 459, 467 (S.D.N.Y. 2021); *Ashburn*, 76 F. Supp. at 440.

The Court further finds that no statements were obtained as part of an improper two-step scheme consisting of an interrogation beginning on the tarmac and continuing at the JNSU office.

*See,* Def. Post-Hr'g Mem. at 12-15. Post-*Miranda* warning statements made where a "two-step interrogation technique [is] used in a calculated way to undermine the *Miranda* warning[,]" are inadmissible. *United States v. Carter*, 489 F.3d 528, 534-35 (2d Cir. 2007) (quoting *Missouri v. Seibert*, 542 U.S. 600, 622 (2004) (Kennedy, J., concurring)[5] (internal quotations omitted)). As set forth above, Defendant's statement made while on the tarmac were not obtained in violation of Defendant's rights. Thus, there is "no need to go further" and address Defendant's argument regarding an improper two-step scheme concerning statements at the JNSU office. *Moore*, 670 F.3d at 229; *Familetti*, 878 F.3d at 62 ("Because [defendant] was not subject to a pre-warning custodial interrogation, we do not reach his corollary argument regarding a deliberate two-step interrogation.").

Accordingly, Defendant's statements made to federal agents at the JNSU office are admissible.

### B. Motion to Suppress Cellphone Evidence

Defendant technically has abandoned his motion to suppress cellphone evidence. While he raised this issue in his moving papers, and the Government responded, Defendant failed to address the issue on reply. Nor has Defendant addressed this issue in any further post-hearing briefing. For this reason alone, his motion to suppress evidence can be denied. Nonetheless, each of Defendant's contentions raised in his initial moving papers are addressed below.

#### 1. Border Search Doctrine

"Routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant[.]" *United States v. Montoya de Hernandez*,

---

[5] The Second Circuit treats Justice Kennedy's concurrence in *Seibert* as controlling. *United States v. Capers*, 627 F.3d 470, 476 (2d Cir. 2010). (quoting *Carter*, 489 F.3d at 535).

473 U.S. 531, 538 (1985). While Defendant relies on the border search doctrine in challenging the cellphone search, the Government is not relying on this doctrine and, thus, this contention is moot. Nonetheless, the Court finds that, while the underlying incident occurred at an international airport, the border search doctrine does not apply as Defendant was not an "entrant" penetrating the border.

### 2. Consent[6]

Consent to search is an exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Consent must be freely and voluntarily given. *Id.* at 222 (quotation omitted). Whether consent was voluntarily given is "a question of fact to be determined from the totality of all the circumstances." *O'Brien*, 926 F.3d at 76 (quoting *Schneckloth*, 412 U.S. at 227). "[C]onsent may be inferred from an individual's words, gestures, or conduct." *United States v. Grant*, 375 Fed. App'x. 79, 80 (2d Cir. 2010). The "ultimate question presented is whether the officer had a reasonable basis for believing that there had been consent to the search." *United States v. Garcia*, 56 F.3d 418, 423 (2d Cir. 1995) (citation and quotation omitted).

Here, the Court finds that Defendant consented to the search his cellphone freely and voluntarily. Moloney advised Defendant of his rights, which Defendant understood, and orally consented to the search saying he had nothing to hide. Tr. 93:19-94:16. Defendant also provided the passcode to unlock his cellphone. *Id.* at 42:2-5, 92:15-93:1, 95:13-19. Defendant's refusal to sign the Search Form, absent more, does not negate his oral consent. *See, United States v. Green*, 2018 WL 6413485, at *25 (S.D.N.Y. Dec. 6, 2018) (quotation and citation omitted) (citing cases) ("Refusal to sign a form acknowledging that one has orally consented does not, absent more,

---

[6] Notwithstanding the Government's assertion in a footnote that the issue of consent is "moot" because a Warrant for the cellphone was obtained, whether an issue is moot is not the Government's determination to make. Gov't Opp'n at 6, fn. 6.

11

negate the oral consent."). Thus, Moloney had a reasonable basis to believe Defendant had consented to the search of his cellphone.

### 3. Search Warrant

A warrant must be supported by probable cause and particularity. U.S. Const. amend. IV. As set forth below, the Court finds that the Warrant was supported by probable cause and particularity, and, even if it were not, the good faith exception to the exclusionary rule applies.

#### a. Probable Cause

Probable cause is demonstrated when the "the totality of the circumstances indicates a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Clark¸* 638 F.3d 89, 93-94 (2d Cir. 2011) (citations and quotations omitted). "Courts routinely find probable cause 'to search cellphones possessed by defendants arrested in connection with [narcotics] crimes based on the experience of agents familiar with narcotics trafficking that traffickers commonly use cellphones to communicate in the course of their narcotics distribution, as well as to store relevant information.'" *United States v. Arias-Casilla*, 2022 WL 2467781, at *4 (S.D.N.Y. July 6, 2022) (quoting *United States v. Hoey*, 2016 WL 270871, at *9 (S.D.N.Y. Jan. 21, 2016) (collecting cases)).

Here, considering the totality of the circumstances, and particularly based on the facts concerning the seizure of kilograms of cocaine included in the Affidavit and Moloney's assertation that "the recipients of contraband smuggled in aircraft compartments often receive information from co-conspirators concerning the quantity or appearance of the contraband in advance of shipment" by cellphone, the magistrate judge had more than ample probable cause to issue the Warrant. *See*, Affidavit at ¶¶10-12. The magistrate judge made a practical, common sense decision that there was a fair probability that evidence of a crime would be found on Defendant's

cellphone. Indeed, common sense and experience could lead a reasonable person to conclude that a person involved in drug trafficking might have the type of information delineated in Attachment B, which includes, *inter alia*, communications or photographs, notes, or sound recordings related to the aircraft or drug trafficking, information related to the identities of co-conspirators or customers, search histories related to drug trafficking, drug types, amounts, prices, and sources, and financial records.

Defendant's challenges to the breadth of the Warrant are utterly without merit. Defendant contends that the Warrant was overbroad because there was no probable cause to search "all of the contents" of his cellphone. Def. Mem. at 23-24. "The overbreadth doctrine . . . requires that the warrant's description of the objects to be seized may not be broader than can be justified by the probable cause upon which the warrant is based." *United States v. Disla Ramos*, 2022 WL 17830637, at *9 (S.D.N.Y. Dec. 21, 2022) (quotation and citation omitted). "[S]earches of computers may sometimes need to be as broad as searches of residences pursuant to warrant." *Ulbricht*, 858 F.3d at 100. While the search of the cellphone could have entailed the exposure of records that were not necessarily the object of the search in order to achieve its goals, these consequences do not necessarily turn the Warrant into a prohibited general warrant. *See, United States v. Ray*, 541 F. Supp.3d 355, 394 (S.D.N.Y. 2021) (quoting *Ulbricht*, 858 F.3d at 100).

Thus, the Court finds that ample probable cause existed for the issuance of the Warrant and Defendant's challenge to the breadth of the Warrant is denied as meritless.

    **b. Particularity**

Particularity requires that a warrant: (1) identify the specific offense for which the police have established probable cause; (2) describe the place to be searched; and (3) specify the items to be seized by their relation to designated crimes. *United States v. Purcell*, 967 F.3d 159, 178 (2d

13

Cir. 2020) (quotation and citation omitted). "The Fourth Amendment does not require a perfect description of the data to be searched and seized[.]" *United States v. Ulbricht*, 858 F.3d 71, 100 (2d Cir. 2017), *overruled on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2018) (quotations and citation omitted). "Search warrants covering digital data may contain some ambiguity ... so long as law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant." *Id.* (quotations and citations omitted).

Here, the Court finds that the Warrant is sufficiently particular. First, the Warrant identifies the specific offenses for which probable cause was established: violations of 21 U.S.C. §§ 952, 960, and 963. *See*, Warrant. Second, the Warrant describes the place to be searched: an Apple iPhone bearing serial number F4HVL9LMJ, which was in the Evidence Storage Room at JFK Building 75, Suite 217. *See*, Attachment A. Third, the Warrant lists ten categories of items to be seized by their relation to designated crimes. *See,* Attachment B. *See also*, *United States v. Lusty*, 57 F. Supp.3d 213, 227 (S.D.N.Y. 2014) ("The inclusion of an illustrative list of seizable items brings the Warrants within the Fourth Amendment's particularity parameters.") (citing *United States v. Riley*, 906 F.2d 841, 844-45 (2d Cir. 1990)).

Defendant's scattergun arguments to the contrary are unpersuasive. Defendant contends there "was no particularization in the warrant; nor, did it restrict the type of data, nor the time frame, that could be searched to the specific areas of the phone that could have produced the kind of evidence described in [the Affidavit]." Def Mem. at 24. First, a warrant "does not necessarily lack particularity simply because it is broad[.]" *Ulbricht*, 858 F.3d at 100. Second, as described above, the breadth of the warrant is supported by probable cause. Third, the law in this Circuit

14

about the interplay between the absence of a time frame and the particularity of a warrant is not settled. *See, United States v. Kamaldoss*, 2022 WL 1200776, at *18 (E.D.N.Y. Apr. 22, 2022) (concluding that, because the law about temporality is not settled, suppression would be unwarranted as the good faith exception would apply). Fourth and finally, Attachment A specifies that the property to be searched is a cellphone. "[I]t will often be impossible to identify in advance the words or phrases that will separate relevant files or documents before the search takes place, because officers cannot readily anticipate how a suspect will store information related to the charged crimes." *Ulbricht*, 858 F.3d at 102. Here, law enforcement agents could not anticipate how Defendant would store information related to any of the charged crimes on his cellphone.

### c. Good Faith Exception to the Exclusionary Rule

Generally, searches conducted pursuant to a warrant are sufficient to establish that a law enforcement officer "has acted in good faith in conducting the search." *United States v. Leon*, 468 U.S. 897, 922 (1984). The presumption of good faith is overcome only when: (1) where the issuing magistrate knowingly has been misled; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable. *United States v. Jones*, 43 F.4th 94, 111 (2d Cir. 2022).

Here, even if there were a basis to invalidate the Warrant, the good faith exception to the exclusionary rule would apply. As an initial matter, there is no evidence that the magistrate judge knowingly was misled or abandoned his judicial role. Furthermore, because there was ample probable cause for the issuance of the Warrant, the application is not so lacking as to render reliance upon it unreasonable. Finally, the Warrant is not so facially deficient rendering reliance upon it unreasonable. " In sum, there was no 'deliberate, reckless, or grossly negligent conduct' or

'recurring or systemic negligence' that the exclusionary rule is meant to deter, and law enforcement's conduct was not sufficiently culpable or deliberate to make deterrence 'worth the price paid by the justice system.'" *United States v. Dumas*, 2022 WL 678910, at *3 (2d Cir. Mar. 8, 2022) (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). Thus, the good faith exception to the exclusionary rule applies here.

Accordingly, Defendant's motion to suppress evidence obtained from his cellphone is denied in its entirety.

**IV.  Conclusion**

For the foregoing reasons, Defendant's motion to suppress is denied in its entirety.

SO ORDERED.

Dated:  Brooklyn, New York
         March 30, 2023

                                                              /s/
                                                    DORA L. IRIZARRY
                                                 United States District Judge