

# COHEN FORMAN BARONE, LLP
## AN EXPERIENCED LAW FIRM
www.cfblaw.com

DAVID J. COHEN  
david@cfblaw.com

CORY FORMAN  
cory@cfblaw.com

CARLA BARONE  
carla@cfblaw.com

SENIOR ASSOCIATE  
BENJAMIN L. SIMPSON  
ben@cfblaw.com

OF COUNSEL  
ROBERT VENTURO  
RICHARD COHEN  
RONALD COHEN

April 14, 2023

Hon. Dora Irizarry
U.S. District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y. 11201
*Via ECF & Courtesy Copies to Chambers*

RE: **United States v. Paul Belloisi, 20-CR-219**
***Jencks* Violation at Suppression Hearing**

Your Honor,

  As the defense had indicated at the pre-trial conference held on April 11, 2023[1], and as we now only further maintain after having received and having fully reviewed the government's April 10, 2023 disclosures pursuant to 18 U.S.C. § 3500 concerning its witnesses in its case-in-chief at trial, it appears clear that a material violation of the *Jencks* Act by promulgation in, and operation through, the current Federal Rules of Criminal Procedure §§ 26.2 and 12(h), has indeed occurred here. The violation occurred through the government's failure to disclose at the time of, or prior to, the testimony of its witness, Customs & Border Protection Officer (CBPO), Michael Robinson at the June 17, 2022 suppression hearing, a 19-page document, patently created by CBPOs in February 2020 that has now been disclosed by the government as § 3500 material for this same witness who will now testify at trial. The document unquestionably constitutes § 3500 material containing prior statements of the witness in the possession and/or control of the government and, critically, which, had it been disclosed to the defense so as to enable the defense to cross-examine the witness with the document at the hearing where the right to such disclosure attaches[2], there is a substantial likelihood that the outcome of the suppression hearing would have been different.

  The defense understands the government's initial responsive position to be that the document in question- a 19-page C.B.P. report[3] exclusively concerning the seizure of the cocaine and Mr. Belloisi by that agency's officers, namely the witness, Michael Robinson, and his partner (or team leader), Frank Morrelli, on February 4, 2020 at JFK Airport- is not actually § 3500 material for this witness (or perhaps for no witness at all in fact by the government's apparent logic where it is simply an amalgamation of lots of officer's contributions and thus

---
[1] As reflected in the Court's Order in the docket entry for April 11, 2023
[2] Fed. R. Crim. Pro. 12(h) (Rule 26.2 applies at suppression hearings).
[3] See, <u>Exh. A</u> and compared to, <u>Exh. B</u> (the government's 18 U.S.C. § 3500 materials disclosed for this witness at the time of his suppression hearing testimony).

Manhattan: 950 Third Avenue, 11th Floor, New York, NY 10022   T: (212) 766-9111   F: (212) 766-9166
Long Island: 228 East Main Street, Patchogue, NY 11772   T: (631) 776-9111   F: (212) 766-9166

1

really attributable to no one as it is signed by no one[4]) and that it was only disclosed to the defense now "in the abundance of caution" as the government has now determined "it would be fair to allow the defense to cross-examine this witness with this document"[5] should the defense desire to do so at trial.

While the defense certainly appreciates the government's choice to err on the side of caution with respect to the defendant's confrontation rights at this juncture of the proceedings, that decision only highlights the government's failure to do so when required to nearly ten (10) months ago and underscores the fact withholding this document could be (and actually was) dangerous to the defendant's enjoyment of those rights in any context in which they apply, as they did at the suppression hearing. The reality is that this document is unquestionably § 3500 material that should have been disclosed and its non-disclosure mattered greatly in determining the nature of the hearing and the outcome.

The *Jencks* Act requires the Government to disclose statements made by a witness relating to the subject matter as to which the witness has testified. 18 U.S.C. § 3500(b). A "statement" includes a written statement made by a witness that has been signed or otherwise adopted by him or a "substantially verbatim recital" of the witness's oral statement that was "recorded contemporaneously." § 3500(e). Upon demand from the defense, such prior statements of a testifying witness relating to subject matter of their testimony must be produced and this rule applies equally to a pre-trial suppression hearing as it does to a government witness testifying at trial. See, Fed. R. Crim. P. §§ 26.2(a), 12(b)(3)(C), (h)[6]. Prior statements, made contemporaneously by a witness and which relate to the subject matter of their testimony constitute discoverable § 3500 material, even when authored or unsigned by a witness, where the witness has otherwise adopted or approved the statements or acknowledged them as true and accurate. Rule § 26.2(f)(1). See, *United States v. Gotchis*, 803 F.2d 74, 77 (2d Cir. 1986) (acknowledging the rule contemplates statements the witness has in some manner vouched for); see also, generally, *Campbell v. United States*, 365 U.S. 85, 93-94 (1961); see also *United States v. Jackson*, 850 F. Supp. 1481, 1508 (D. Kansas 1994).

As the Court had indicated at the April 11, 2023 pre-trial conference, even where a Rule 26.2 violation has occurred at the suppression hearing and is identified after a court has rendered a decision upon the issues to be determined at the hearing, it remains "within a district court's

---

[4] Even though officers like CBPO Robinson refer back to these reports as accurate recordings and repositories of the "correct" information. See, Exh. C (text message of witness, CBPO Robinson to government day after suppression hearing).

[5] This is counsel's specific recollection the words of counsel for the government in discussing this issue after the proceedings had adjourned at the pre-trial conference. Counsel apologizes if counsel for the government was misheard and is being misquoted.

[6] Subdivision (h) of FRCP was added in 1983, and the Advisory Committee on the Federal Rules of Criminal Procedure explained the significance of the change in a note:
This change will enhance the accuracy of the factual determinations made in the context of pretrial suppression hearings. As noted in *United States v. Sebastian*, 474 F.2d 1267 (2d Cir. 1974), it can be argued most persuasively that the case for pre-trial disclosure is strongest in the framework of a suppression hearing. Since findings at such a hearing as to admissibility of challenged evidence will often determine the result at trial and, at least in the case of fourth amendment suppression motions, cannot be relitigated later before the trier of fact, pre-trial production of the statements of witnesses would aid defense counsel's impeachment efforts at perhaps the most crucial point in the case." FRCP 12(h) Advisory Committee's note to the 1983 Amendment.

discretion to reopen a suppression hearing"[7] and it has "long been the law in this Circuit that, in order to reopen a suppression hearing on the basis of new evidence, the moving party…must show that the evidence was unknown to the party, and could not through due diligence reasonably have been discovered by the party, at the time of the original hearing." *United States v. Leaver,* 358 F. Supp. 2d 273, 279 & n.30 (S.D.N.Y. 2005). When the newly discovered evidence is material to the core issues to be determined at hearing and the court's findings thereupon, reopening may be warranted in a court's reasonable and prudent exercise of its discretion. *Cf., United States v. Oquendo,* 192 F. Appx'x 77, 81 (2d Cir. 2006); *United States v. Almonte,* 2014 WL 3702598 (S.DN.Y. 2014) (denying requests to reopen suppression hearing based on new evidence that does not bear on material or core issues at suppression hearing).

The document at issue presently[8] clearly contains a lengthy narrative section (several pages of narrative, although admittedly the same narrative is repeated several times essentially verbatim) that describes the actions of this particular witness especially (as well as his partner CBPO Morrelli and their fellow CBP Officers, supervisors, and some other law enforcement agents including HSI Agents Moloney and Gabbay- the other witnesses at the suppression hearing held last year) that describes precisely the subject matter of the hearing testimony this witness provided[9]. Acknowledging in oral discussions with counsel this substantial narrative section- **which clearly includes unique factual contributions that could only have been supplied by this particular witness**[10]- the government counters that the document was not actually authored (or created in the computer system that generated the report) by this witness but by his partner, CBPO Morrelli, and therefore is not really even properly classified as being subject to disclosure under the applicable Rules as § 3500 material and thus, the defense has no cause for complaint. The government is simply wrong.

The fact that the report may not have been written or typed by the witness but by his partner is relevant but wholly undecisive of the issue in terms of whether the document is § 3500 material. What is of far more importance is that: 1) the document unquestionably contains the substantive statements of this witness specifically, 2) that he has adopted those recorded statements contained in the document as being true and accurate, and, 3) that those recorded statements are the exact subject matter of the relevant testimony at the suppression hearing, where they were not disclosed by the government so as to permit any manner of cross-examination of the witness with the statements at the hearing. The fact that the witness has

---

[7] *United States v. Tisdol*, 450 F. Supp. 2d 191, 194 (D. Conn. 2006).
[8] See, Exh. A (starting at the "Narrative" section on page 10 of 19).
[9] See generally, Exh. D (witness' hearing testimony).
[10] As the witness described in his hearing testimony, (See, Exh. D, *Transcript pgs. 164-66*) he discovered the narcotics *alone in the avionics compartment* and thus the portion of the narrative in the report now at issue about the facts and details of the discovery of the narcotics must have come exclusively from him and no one else. Just the same with the portions of the narrative about what he saw when he supposedly looked into the avionics compartment in some manner while the defendant was inside and observed actions of the defendant no one else supposedly saw (Id, *Transcript pgs. 169, 188-90*), he is the only one who the government's evidence would say had such a vantage point, so that is, unequivocally…**his** statement in the narrative. And, finally, most obviously, the portions of the report now at issue that record the interaction, detention and tarmac interrogation of the defendant by CBPO Robinson himself and the responses allegedly made by the defendant to whatever manner of questioning took place. See generally, Exh. A, (*Narrative beginning at pg. 10 to end and repeated several times*) and see also, Exh. D, (*Transcript pgs. 170, 190-98*).

3

adopted the information that came exclusively from him and is contained in the narrative portion of the report as an accurate recording of his statements is manifestly illustrated by this witness' text message (presumptively to either the prosecutors or Agent Moloney although the defense does not know) the day after he gave his hearing testimony last June, where he clarifies what he evidently thought could be perceived as an error in his testimony about where he found the drugs in the avionics compartment by referring to the fact that, fortunately, the "seizure report" accurately[11] stated the facts as only he experienced them of course, with regard to that issue. See, Exh. C (*text message content*). Whether he is referring to this specific "seizure report" or perhaps another (as suggested by the government in oral discussions), it matters not, as there were not *any reports* containing this witness' statements as recorded in the narrative portion of the report now at issue, disclosed to the defense as § 3500 material for CBPO Robinson as a witness at the suppression hearing.

Another apparent protestation of the government (as discerned by the defense in discussing the defense's instant claim) is that the narrative portion of the report at issue, and, containing the witness' statements, was indeed disclosed prior to the hearing, but simply in a different format and as § 3500 material for a different witness, specifically HSI Agent Moloney. While this observation is indeed true- that the defense had the substance of the narrative section of the report at issue in § 3500 material disclosed specific to Agent Moloney- it is both in one sense, beside the point, but also, in another sense, suggestive of *the entire point* the defense is making, *infra,* about why the suppression of the document was not just material, but critical to the outcome of the suppression hearing. The fact that the narrative was disclosed in and with reports and documents the defense was told were § 3500 for Agent Moloney **would not and did not give the defense the ability to cross-examine CBPO Robinson with them at the suppression hearing.** Indeed, and critically, the government objected to and the Court sustained multiple such objections when the defense counsel attempted to do precisely that at the suppression hearing. The defense was not allowed to cross-examine the witness with the portions of the narrative report that were, then, only § 3500 material for Agent Moloney but which now, at trial, are disclosed as being contained in a lengthier report created not by Moloney's agency, HSI, but CBP, the agency of this specific witness CBPO Robinson and which has now as of Monday, April 10, 2023, been accurately classified as what it is: **§ 3500 material of CBPO Michael Robinson**. See, Exh. D, (*Transcript pgs. 195-96*).

Had the report and statements of the witness therein been disclosed to the defense as it should have been, there would not have been any basis for the defense to have been limited and prevented in seeking to cross-examine the witness about the exact narrative sections of this report the defendant was in this case precluded from asking specific questions about at the hearing. To say that such a significant change in disclosure (vastly more is contained in just the narrative section of the report at issue than the entirety of what was disclosed as § 3500 material

---

[11] To be clear, defense counsel considers the actual accuracy of the factual issue that was the subject of the text message at Exh. C, to be quite irrelevant to the present argument. The point is that the witness was specifically affirming that a written "seizure report" contained the most accurate version of his recounting of what he had done relating to the case. So, he clearly *adopted* that report as containing his accurate prior statements about the subject matter of his testimony and was communicating that to the prosecution team expressly. Notably, this communication from the witness about a possible error in his testimony was never before brought to the attention of the defense or the Court to the defense's knowledge.

4

for this witness at the hearing[12]) and in the commensurate change in the nature and appropriate scope of the cross-examination of the witness, would not have had a reasonable likelihood affect the outcome of the suppression hearing cannot be seriously maintained when viewing this issue in totality in the context of this case. Particularly important for the Court to consider, the defense urges, is the fact that government is now representing to the defense that it no longer plans to call Agent Moloney as a witness and, even more importantly, that it does not intend to introduce in its case-in-chief the custodial statement of the defendant obtained by Agent Moloney or anyone else at the "JNSU" location, but **only now** the statements taken from the defendant by this witness, CBPO Robinson on tarmac.

If the Court finds this turn of events somewhat ironic when recounting the initial motion papers and oral arguments that led to the scheduling of the suppression hearing concerning the defendant's custodial statements, the defense would quite agree. After all, the government stated and argued that it was seeking to admit the statements at the JNSU only, and that anything that happened on the tarmac between CBPOs (like Robinson) and the defendant had no bearing whatever on the admissibility of the custodial, Mirandized statements at JNSU which is what it sought to introduce in its case. See generally, *Govt Response in Opposition to Motion to Suppress (ECF No. 34);* see also, Exh. F, (*Transcript Colloquy regarding issue at beginning of suppression hearing, pgs. 3-19*). What frustrated the government's position and supporting argument to so narrow the hearing was the emergence of a portion of the relevant narrative of the report now at issue within a report (and also existing as an unauthored stand-alone document) in Agent Moloney's suppression hearing § 3500 material. The defense raised this after getting the material, at the beginning of Moloney's testimony that this narrative, once contextualized and fully viewed just before Moloney was to testify, would certainly seem to suggest that a great deal more information was extracted from the defendant while in some form of relevant 4th amendment custody and confirmed the defendant's claim that he was indeed questioned extensively on the tarmac. And, the Court agreed, to the extent that the Court felt the government must account for the time the defendant was in custody and being questioned, if he was questioned during that custody on the tarmac, before the officers who then took custody and questioned the defendant in the later statements (at JNSU) the government sought to submit were not present during those initial stages, which they clearly were not just by the paperwork. See, Exh. F. So, then the hearing and the (austere) discovery[13] with respect to calling CBPO Robinson on the second date of the suppression hearing proceeded as already recounted above.

The government has now effectively chosen to abdicate their freedom to introduce the longer and more detailed JNSU statement and to embrace the previously irrelevant and ignorable statements made to CBPO Robinson on the tarmac, as the Court's ruling has permitted them to do. But the license the Court has given the government to introduce the defendant's statements to CBPO Robinson on the tarmac is predicated upon the exceedingly limited scope the defense was given at the hearing which was understandably based on the extremely limited disclosure the defendant had and could point to in arguing its right to cross-examine this witness. Given the unexpected and now exclusive position of this witness as **the** law enforcement officer through whom the defendant's alleged statements were made and upon encountering law enforcement on the date of the incident as will be presented to the jury by the government in its case-in-chief, the

---

[12] See, Exh. B.
[13] See, Exh. B.

5

limits on the defense's ability to cross-examine this witness at the suppression hearing about these very statements due to the discovery violation is of such a level of manifest materiality, that the Court simply should tolerate the current result.

While the defense does not question the government's representation that it may not have been specifically aware of this specific report[14] now disclosed and at issue at the time of CBPO Robinson's hearing testimony, the jurisprudence in this area does direct the Court to consider whether the discovery violation by the prosecution is inadvertent or willful in considering remedy. The defense suspects no ill will of the government or its exceedingly able counsel. However, especially under the circumstances of this case, and in light of such a communication as CBPO Officer Robinson's text message the day after his testimony to some member of the prosecution table[15], it is simply inconceivable to the defense that the government cannot be considered to have been well aware and in control of reports (probably containing the exact same narrative repeated over several times in the report at issue as well as appearing in Moloney's reports[16]) that contained recordings of this witness' statements he adopted as being true and accurate as to what he did and said and was said to him by the defendant, directly relating to his hearing testimony.

The defense would respectfully move the Court to reopen the suppression hearing and strike the testimony of CBPO Robinson completely. In the alternative, the defense would move the Court to reopen the suppression hearing and permit the defense to cross-examine CBPO Robinson with respect to this document and its contents and all relevant matters within the reasonable scope thereof in so far as the document constitutes his adopted recorded statements relating to the subject matter of his hearing testimony and should have been disclosed under Fed R. Cr. P. §§ 26.2, 12(h).

Sincerely yours,

David J. Cohen, Esq. &
Benjamin L. Simpson, Esq.
Cohen Forman Barone, LLP.
Counsel for the Paul Belloisi

Cc:
AUSAs Robert Pollack & Margaret Schierbel
*Via electronic mail*

---

[14] Exh. A.
[15] Exh. C.
[16] See generally, Exh. E, Agent Moloney's Reports disclosed as § 3500 material at the suppression hearing containing the same narrative as in report at issue.