**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 20-CR-219 (DLI) |
| | ) | |
| PAUL BELLOISI | ) | The Hon. Dora Irizarry |
| | ) | |
| Defendant. | ) | |
| ———————————————————— | ) | |

## PAUL BELLOISI'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL

May 16, 2023

_____/s/_____

David J. Cohen, Esq.
Benjamin L. Simpson, Esq.
Cohen Forman Barone, LLP.
950 Third Avenue, 11th Fl.
New York, NY 10022
Tel.  (212) 766-9111
Fax: (212) 766-9166
David@cfblaw.com

To:    BREON PEACE
       United States Attorney
       Eastern District of New York
       271 Cadman Plaza East
       Brooklyn, New York 11201

       Attn: Robert M. Pollack, Esq.
       Margaret Schierberl, Esq.
       United States Attorney
       Eastern District of New York

# **Table of Contents**

Introduction……………………………………………..………………..…....…….……**3**

    I.      Applicable Law………………………………………..………….….………...**3**

    II.    Evidence at Trial……………………………………...……………………………**5**

Argument…………………………………………..………….………..…………...…**11**

    I.     The evidence at trial was insufficient to sustain the jury verdict of conviction against the defendant with respect to each count of the indictment…………………..**11**

        A.  The evidence at trial was insufficient as to both conspiracy counts………………**11**

        B.  The evidence at trial was insufficient for any rational trier of fact to find, beyond a reasonable doubt, that the element of the defendant's knowledge and intent that the controlled substance involved would be coming into the United States from abroad……………………………………………………………………**15**

Conclusion…………………….……………………………………………………**17**

## Introduction

The defendant, Paul Belloisi, was charged with conspiracy to possess a controlled substance with the intent to distribute under 21 U.S.C. §§ 846, 841(a)(1), with conspiracy to import cocaine under 21 U.S.C. §§ 963, 952(a) and 960(a)(1), and with importation of cocaine under 21 U.S.C. §§ 952(a), 960(a)(1). At the conclusion of his trial before this Court, the petit jury rendered a verdict of guilty as to all three (3) counts. Pursuant to the schedule set by the Court for filing of the same immediately after the verdict was rendered, the defendant presently submits for the Court's consideration, the instant motion, pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure, for the Court to enter a judgment of acquittal on all counts.

### I.     Applicable Law

A trial court must affirm a jury's verdict of guilt if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). While the defendant bears the heavy burden[1] of demonstrating the insufficiency of the evidence supporting a conviction, to sustain the conviction, the Court must be satisfied that after drawing all reasonable, permissible inferences in favor of the government, a rational finder of fact could determine that every element of the crime- each crime of conviction- was proven beyond a reasonable doubt. *United States v. Rodriguez*, 392 F.3d 539, 544 (2d Cir. 2004); (*U.S. v. Pierce*, 224 F.3d 158, 164 (2d Cir. 2000).

Relevant to the evidence introduced at trial in the case at bar, the Second Circuit has emphasized that "(d)irect evidence is not required; '[i]n fact, the government is entitled to prove its case solely through circumstantial evidence, provided, of course that the government still demonstrates each element of the charged offense beyond a reasonable doubt." *United States v.*

---

[1] *United States v. Cruz*, 363 F.3d 187, 197 (2d Cir. 2004).

*Lorenzo*, 534 F.3d 153, 159 (quoting *United States v. Rodriguez, supra*, at 544). However, the Court has also held that "a conviction may not be based solely on circumstantial evidence unless the evidence is 'overwhelming' and is 'inconsistent with any theory of innocence.'" *United States v. Farhane*, 634 F.3d 127, 138 (2d Cir. 2011). Moreover, "when the evidence relied upon by the government is circumstantial, that evidence must be sufficient to support an inference of guilt beyond a reasonable doubt, and not simply *consistent* with guilt." *United States v. Bulgin*, 19 F.3d 270, 275 (2d Cir. 1994). In *Bulgin*, the Second Circuit further explained that "to support a conviction, the inference of guilt must be the only rational conclusion that can be drawn from the circumstantial evidence." *Id*. Similarly, in *United States v. Glenn*, 312 F.3d 58, 67 (2d Cir. 2002), the Second Circuit emphasized that "if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *Id,* at 70.

Addressing the level of deference to the jury's determination, the Second Circuit has said: "[w]hile we defer to a jury's assessments with respect to credibility, conflicting testimony, and the jury's choice of the competing inferences that can be drawn from the evidence, specious inferences are not indulged." *United States v. Jones*, 393 F.3d 107, 111 (2d Cir. 2004). "'[It] would not satisfy the [Constitution] to have a jury determine that the defendant is *probably* guilty."[2] *Rodriguez*, 392 F.3d at 544 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993) (emphasis in original).

In order to sustain a conviction of a conspiracy offense, the prosecution must offer evidence from which one can reasonably infer that the defendant knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it. *Rodriguez*, 392 F.3d at 545. "(A

---

[2] The defense of course requested the Court charge the jury with respect to the insufficiency of a finding that he is probably guilty, especially in light of the Court's stand-alone instruction that the jury need not find the defendant guilty to a mathematical certainty to find proof beyond a reasonable doubt. See, ECF No. 72, *Defendant's Proposed Final Jury Instructions*.

conspiracy) conviction cannot be sustained unless the Government establishes beyond a reasonable doubt that the defendant had the specific intent to violate the substantive statutes." *United States v. Gaviria*, 740 F.2d 174, 183 (2d Cir. 1984). A conspiracy conviction can only be sustained where the evidence proves beyond a reasonable doubt that there was a "conspiracy to commit a particular offense and not merely a vague agreement to do something wrong." *United States v. Provenzano*, 615 F.2d 37, 44 (2d Cir. 1980). And, "[s]uspicious circumstances…are not enough to sustain a conviction for conspiracy…and mere association with those implicated in an unlawful undertaking is not enough to prove knowingly involvement." *United States v. Nusraty*, 867 F.2d 759, 763-64 (2d Cir. 1989).

To obtain a conviction for importation of a controlled substance and conspiracy to import, the government must prove beyond a reasonable doubt that the defendant had knowledge and intent that the drug would be brought into the U.S. from beyond its borders. Indeed, the government must prove not merely that a defendant was a member of a conspiracy[3] to traffic, but also that a defendant had the knowledge and intent that the drug was to be coming into the U.S. from beyond its borders. See, *U.S. v. Londino-Villa*, 930 F.2d 994 (2d Cir. 1991) (where the Court considered and reversed the defendant's conviction for importation and conspiracy to import the controlled substance where the evidence was insufficient to support this particular *mens rea* element).

II.     *The Evidence at Trial*

At trial the government, by its own acknowledgement, did not introduce any *direct evidence* of the defendant's guilt of any of the three counts with which he was charged and

---

[3] This knowledge requirement also applies to Belloisi's conspiracy charge with respect to importation. *See United States v. Monaco,* 194 F.3d 381, 386 (2d Cir.1999) ("To prove conspiracy, the government must show that the defendant ... knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects.")

ultimately found guilty by the petit jury. In this regard, it is undisputed that there was no evidence that that defendant actually possessed the cocaine at issue or direct evidence that he made any specific agreements with others to possess with the intent to distribute or to import cocaine into the U.S. There is not present here, as there often well be in conspiracy cases, evidence from or about any cooperators, informants, undercover officers. There are no codefendants and there is not any evidence regarding any actually identified co-conspirators and their activities as part of the conspiracy. There are not any recorded phone calls or writings showing Mr. Belloisi's membership in the conspiracy or his agreement in any manner with any real or hypothesized co-conspirator. There is no confession or admission of Mr. Belloisi to law enforcement or anyone else as to his having had any membership in or having had any knowledge of the conspiracy charged or intent to further its objectives. And, of course, there is no evidence of Mr. Belloisi having possessed any contraband, any currency of relevance, or any unequivocal instrumentalities relating to furthering the goals of the conspiracy.

While the government certainly presented certain *direct* evidence: that cocaine was found by law enforcement agents and that Mr. Belloisi entered the area the aircraft on which it was found some four (4) hours later, the defense submit that all parties would agree that no direct evidence was presented as to Mr. Belloisi's *mens rea* or with respect to the element of his having conspired with others (counts 1 & 2) or his having aided or abetted others in the importation of cocaine (count 3). The government's evidence with respect to these elements of the crime were of a wholly circumstantial nature and are summarized, albeit as extensively as practicable, below.

The government's evidence of Mr. Belloisi's membership in a conspiracy to possess or to import cocaine and his having aided and abetted others in the importation of cocaine was of two (2) essential broad types, both of which were wholly circumstantial in nature. The first type of

evidence the government offered was: evidence of Mr. Belloisi's specific activities during his work shift as a mechanic for American Airlines at JFK Airport on February 4, 2020, including, most pertinently, his entry into the avionics compartment of a 737 aircraft's avionics compartment at approximately 7:18pm, where, CBP Officers had found and removed ten (10) bricks of cocaine some 3-4 hours earlier off of an arriving flight from Jamaica, and then Mr. Belloisi's detention, arrest and interrogation that ensued immediately thereafter. The government introduced direct evidence- some of the only direct evidence in the case- showing the flight on which the cocaine was discovered had arrived from Montego Bay, Jamaica at approximately 3:30pm on February 4, 2020 and that the aircraft, which was docked at Terminal 8, Gate 7 upon its arrival, remained at that location and was scheduled from an 8pm domestic departure to San Diego at 8pm on the same date.

The government's evidence in this regard included testimony of law enforcement agents about the discovery and seizure of the cocaine in the aircraft, the replacement of the cocaine with four (4) sham bricks including one with an installed transponder and which were sprayed with a "clue spray" that would show on the skin or apparel of anyone who touched it. The government offered the actual cocaine, and sham brick and brick with transponder into evidence. This evidence also included testimony from American Airlines employees (including a manager, a pilot, and a corporate security officer) concerning Mr. Belloisi' schedule, assignments and permissions to be in locations at the airport as a mechanic with American Airlines at JFK as well as concerning American Airlines policies and protocols. In the case of the pilot, Randall LaRuth, the government presented evidence through his testimony concerning the aircraft including his claimed time of arrival and the lack of any reported or actual mechanical issue on the departing flight to San Diego, offered specifically to foreclose the exculpatory explanations Mr. Belloisi gave for his presence at

the aircraft and in the avionics compartment where the drugs and previously been located. Critically, LaRuth's testimony ultimately became self-impeaching and internally contradictory with respect to the principle reason for which he was called as witness as he claimed to have boarded the aircraft at 7:00 pm and remained inside the cockpit the entire time at least through takeoff[4] while also, at the very same time, testifying that if the avionics compartment door had been opened, he would have become specifically aware of it because of warning alarm that would have gone off and that there was no such alarm at any time during the lead up to departure on February 4, 2020. See. *Tr. 295*. LaRuth's testimony that an open avionics compartment door would unequivocally cause a noticeable alarm to go off in the cockpit was confirmed by the testimony of defense witness Frank Ricci and thus LaRuth and Ricci were in accord on this point. Finally, the government offered into evidence Mr. Belloisi's American Airlines jacket which had some tears in the interior lining as well as a photograph of a red tool bag discovered on the vehicle Belloisi allegedly drove to the 737 aircraft but did not bring with him to the avionics compartment so as to create any inference that it served any purpose whatsoever in the commission of the offenses.

*Cellphone and Cellular Phone Record Evidence*

The second type or class of evidence- this class entirely consisting of circumstantial evidence, was evidence offered at trial from both the extraction of the cellular phone of the defendant and from the T-Mobile phone records of an individual identified in Mr. Belloisi's phone as "Lester". The evidence from Mr. Belloisi's phone consisted of certain photographs and a cellphone video taken by Belloisi's device, apparently at JFK airport of February 4, 2020, the communications history between Mr. Belloisi and the "Lester" contact on February 3, 2020 and

---

[4] See, *Tr. at 253.*

February 4, 2020, as well as certain "location data" and "contact" information and the available communications history from the "Lester" T-Mobile records beginning with a final telephone call from the "Lester" contact to Belloisi's phone on the evening of February 4, 2020 through the end of that device's usage over the following days.

Specifically, with respect to the communications between Belloisi and "Lester", the evidence included the time and duration of all telephone calls as well as the time and content of all chat messages (including WhatsApp and IMessages). Specifically, with respect to the "Lester" T-Mobile records, the government presented evidence through an expert witness (Darryl Valinchus) showing a visualization of cell site location to which that device allegedly connected at various points of February 3-4, 2020. The combined evidence of the communications and information from both sources (Belloisi's device and the T-Mobile records) indicated a late night/early morning meeting between Belloisi and the user of the "Lester" device on February 3/4 , 2020 in the Bronx, and phone calls and chat messages between the two during the early afternoon on February 4, 2020, additional phone calls between the two between 6pm and 7pm on February 4, 2020, a chat message (which may never have been read[5]) in Spanish from "Lester" to Belloisi at 6:47pm on February 4, 2020 and then numerous calls from "Lester" to Belloisi in the hours after Belloisi was taken into custody. The evidence with respect to the cell sites for the "Lester" T-Mobile records, allegedly shows the "Lester" device connected to a cell site near JFK airport near the time the "Lester" device was attempting to reach Belloisi numerous times while he was in custody. Finally, the T-Mobile records show numerous telephone calls made by a friend of Mr. Belloisi's as well as two calls from the cellphone of Belloisi's daughter two days after Belloisi's arrest and the curtailment of all apparent activity and usage to the "Lester" phone at or about that same point in

---

[5] As Mr. Valinchus conceded, that particular chat message patently lacked the "Read" status all of the other chat messages between the parties bore. See, *Tr. at5296* see also, *Def. Exhibit. B-6*.

time. Notably, with respect to the "Lester" T-Mobile records and their completeness with respect to that user's communications, Mr. Valinchus conceded that the records did not include any communications activity the device would have engaged in via WhatsApp as the user had clearly used significantly during the time the device was being actively used, at least with respect to communications with Mr. Belloisi. See, *Tr. at 598.*

Critically, while all of the cellphone evidence was designed to lead the jury to infer that Mr. Belloisi and "Lester" were co-conspirators related to the cocaine the government agents discovered on the arriving 737, none of the content of the communications in the evidence presented at trial contains any words, phrases or references, even in alleged coded language, that refer to anything the government alleges to be drugs, money, contraband or anything in particular that is a reference to drug trafficking or importation. Moreover, none of the content of any communications presented to the jury contain any words, phrases or references to any airports, countries, cities or geographical locations or to any times, flight numbers or the like much less any names or nicknames of other individuals. None of any of the communications are identified by the government anywhere in the record as containing any specific information related to Mr. Belloisi or to "Lester's" roles in the conspiracy, either of their understandings of the conspiracy or the goals of the conspiracy, or any acts of they, or anyone else, have taken or would be taking in furtherance of the conspiracy (or any conspiracy) or achieving its goals. Even the cellphone photographs and video taken on Belloisi's phone which the government argued were made for the purpose of sending to someone related to the conspiracy, were never indeed sent to anyone at all other than Belloisi's own device. This cellphone evidence simply shows the existence of some type of relationship and the activity and discontinuation of usage of the device in question for "Lester" and the government then asked the jury to find that inferences of guilt against the defendant (and

necessarily by extension, "Lester") are the only reasonable ones to draw with respect to their relationship and Mr. Belloisi's experience after first entering and then exiting the 737 's avionics compartment on February 4, 2020.

## II.  The Evidence at Trial Was Insufficient To Sustain The Jury Verdict Of Conviction Against The Defendant for Each Count Of The Indictment

*A.  The Evidence at Trial was Insufficient as to Both Conspiracy Counts*

Viewing the evidence adduced at trial, in the aggregate, and in the light most favorable to the prosecution, the Court must still find the find evidence of the defendant's agreement with others in the conspiracy charged in the indictment was insufficient for a rational jury to have found proven beyond a reasonable doubt. This is because, even giving all benefits to the government with respect to any reasonable inferences to be drawn from the cumulative variety of highly circumstantial evidence, there is still a critical element missing: *any indication that Mr. Belloisi knew the nature and specific object of the conspiracy*. See generally, *Lorenzo*, 534 F.3d 160. While this concept of the lack of evidence of Belloisi's specific knowledge of the object of the conspiracy is retuned to with greater focus, *infra*, in discussing the insufficiency of the evidence at trial with respect to the second two counts dealing with importation, in this case, with respect to the initial narcotics conspiracy charge itself, even more fundamentally lacking than evidence of the defendant's knowledge of the specific object of the conspiracy, is **any evidence of his actual agreement with anyone to do anything in relation to the conspiracy**. This lack of any evidence of any agreement is especially conspicuous in light of the startlingly scant of evidence of the only (even alleged, albeit, uncharged) co-conspirator, "Lester", even being a member of the conspiracy, and the fact that Mr. Belloisi was not found in possession of any drugs, money or other contraband.

"Lester" certainly occupies a rather unique, albeit amorphous, position as the only other identified member of the alleged conspiracy beyond Mr. Belloisi himself under the prosecution's theory, and in the evidence they presented to the jury. Indeed, "Lester" is the only alleged co-conspirator the government offered *any evidence of the existence of* save the generalized reference to the someone or someones who, the government posits (somewhat dubiously considering the government's representation as to the exactitude and its certainty of the proposition), *must* have put the cocaine onto the plane in Montego Bay, Jamaica (rather than at some earlier point in the journey of this particular aircraft either inside or outside the United States)[6]. But there was no evidence anywhere before the jury of any specific person who was part of the conspiracy other than Belloisi and this "Lester". And, critically, "Lester's" entire alleged involvement in the conspiracy is based exclusively upon his relationship with Belloisi and no one else. **"Lester's" role in the conspiracy is exclusively defined through his unknown relationship with Belloisi and he is not alleged to do anything or communicate with anyone or meet with anyone other than Belloisi in relationship to the conspiracy.** Then, once the general and unexplained relationship with "Lester" was put into evidence, it functioned to essentially be flipped back by the prosecution upon Mr. Belloisi as supposed evidence of him having a suspicious or unorthodox relationship with someone- in addition to the entire first class of evidence, discussed, *supra*, regarding his presence in the location where the drugs had been found and his having likely

---

[6] The defense was not permitted to introduce a more extended path history of the aircraft showing some 3-5 days prior to the two flights introduced by the government in their evidence presentation. See, *Government Exhibit 104; see also, Defense Exhibit D-1 (precluded)*. The defense does not dispute that if the defendant was part of the conspiracy and was aware the plane had come from outside the U.S. and had the drugs on it, it would matter not whether the drugs had been put on the plane inside the U.S. initially given their departure and reentry, knowledge of which the defendant would have. Rather, the defense posits that given the lack of any evidence of Belloisi's knowledge about the inbound flight, if he was simply directed by "Lester" to *an* aircraft, especially an aircraft that was going to soon depart to a domestic location much sooner than it had landed, it would be an extremely reasonable inference for the jury to conclude Belloisi had been part of the conspiracy but not the importation aspect thereof. See further discussion, *infra*.

touched at least the area around where the drugs were found in that small compartment despite his exculpatory explanations. But this is a patently circular argument that is impossible to transform into proof beyond reasonable doubt with respect to the conspiracy counts and also one rife with conjecture and innuendo masquerading as reasonable or even necessary inferences that simply fail to exclude equally tenable or certainly nearly equally tenable inferences of innocence with respect to any involvement in the charged conspiracy. See, *United States v. Glenn, supra*, 312 at 67.

It is indeed equally tenable and natural to infer from the cellular phone and cellular record evidence presented that Belloisi and "Lester" were involved in some type of activity or common venture perhaps around the time period just before Belloisi's arrest and that they were supposed to be in contact, or perhaps see one another later in the evening on February 4, 2020, but that there was no correlation between their relationship and what befell Belloisi (whether or not he was independently a member of the conspiracy without "Lester") on February 4, 2020 at JFK. It is absolutely reasonable, and at least equally tenable, to infer that "Lester", having learned of Belloisi's arrest and alleged involvement with felony drug trafficking, elected to discontinue his contact with the man and stop using the short-term telephone he had been using to communicate with Belloisi, lest he might become caught up in whatever had happened to Belloisi and the allegations he was facing. After all, standard human experience teaches that when an individual is accused of a crime or other abhorrent act, many people in their life will choose to turn their back on that person and discontinue any association with them.

Absent anything more than conjecture that the Belloisi / "Lester" relationship was about anything specific and coupled with, literally, zero extrinsic evidence about "Lester" or his actions[7],

---

[7] The defense had anticipated that "Lester" and his alleged status as a co-conspirator, including his statements set forth in chat messages, would be predicated exclusively upon conjectural evidence concerning his unspecified relationship with Mr. Belloisi, and that was part of the defense's *motion in limine* seeking to prelude this material as irrelevant given the failure to establish "Lester" as a co-conspirator through any independent evidence. See, ECF

communications, or relationships with anyone else, there simply cannot be an inference of guilt from that fact of the relationship between he and Belloisi or details communications activity relating thereto presented at trial. Looking at the evidence in this regard in light most favorable to the government, there just cannot be an inference of guilty that excludes all reasonable, non-guilty ones concerning the cellular phone evidence and relationship and communications with "Lester" as proof of the defendant's membership in the charged conspiracy. See generally, *United States v. Bulgin, supra*, 19 F.3d at 275.

The facts at issue here are similar to those in *United States v. Rodriguez,* 392 F.3d 539 (2d Cir.2004), where the Second Circuit found the evidence insufficient to support the defendant's conviction for possession of heroin with the intent to distribute and conspiracy to distribute heroin, despite the fact that "the government presented sufficient evidence from which the jury could have found that [the defendant] served as a lookout" in a drug transaction. *Id.* at 545. Critically, although the defendant in *Rodriguez* was in close proximity to boxes containing heroin, "the heroin was hidden inside a telephone box and also wrapped in two bags." *Id.* at 547. Because the appearance of the boxes did not establish their content, the Circuit concluded that the defendant's proximity to the hidden contraband did not amount to "circumstantial evidence adequate to prove" the defendant's "knowledge and specific intent to aid and abet a *drug* transaction." *Id.* at 546–47. The Circuit similarly found that the fact that defendant Rodriguez owned the car used in the drug transaction—just as Belloisi had a means of accessing the avionics compartment used in the crime at issue in this case—did not establish his knowledge of the origin of the cocaine as being from outside the U.S. *Id.* at 546. Furthermore, although there was evidence that the defendant in *Rodriguez* participated in planning conversations, the Court found that this participation was

---

No. 45, *Defendant's Motion in Limine*. The defense of course maintained the relevancy objection to each item as offered at trial.

insufficient to support a conviction because there was no evidence "of the precise contents of the conversations," and particularly whether these conversations mentioned drugs. *Id.* at 547–48; *cf. United States v. Labat,* 905 F.2d 18, 22 (2d Cir.1990) (affirming a conviction for conspiracy to distribute narcotics when a defendant was heard using coded drug language during telephone conversations). Here there is even qualitatively less than there was in *Rodriguez* or *Labat*, with respect to evidence of "planning conversations" as there was no evidence of any content of any communications that the government has been able to point to as having been about drugs at all, even in any manner of code, and were only in engaged in with someone who was, at most, suggested to the jury to a co-conspirator based exclusively upon his meeting and communications with the defendant.

B. *The Evidence at Trial was Insufficient for Any Rational Trier of Fact to Find, Beyond a Reasonable Doubt, the Element of the Defendant's Knowledge and Intent that the Controlled Substance Involved Would be Coming Into the United States From Abroad*

Considering the question of Belloisi's alleged knowledge regarding the international origin of the cocaine or that it would be coming into the country from abroad, notably, there is no evidence whatsoever that Belloisi ever was told about which flight or from which country the drugs would be arriving. Indeed, there is no evidence of any kind that he was ever told about the arrival of the drugs by anyone, or that he could have inferred their international origin through conversations or activities in which he participated. For example, Belloisi was not present at, nor did the government presented any evidence of any conversations or communications of any type, with or amongst any co-conspirators, where anything with respect to drugs or the origin thereof, or the flight on which they would arrive, was discussed or even referred to, even allegedly, in code. At the only alleged meeting between Belloisi and any alleged co-conspirator ("Lester" on February 3rd and 4th 2020) Belloisi was apparently present—but there is no evidence this meeting had any

relationship to narcotics or, even if it did concern narcotics (a baseless speculation), that any information was conveyed to Belloisi about where the following day's shipment of cocaine was coming from in terms of its point of origin or the origin of the flight on which it would arrive. Nor is there any evidence in the record suggesting that "Lester" was any manner of co-conspirator beyond the evidence that simply establishes that he and Belloisi had *some type of relationship*. But beyond the fact that "Lester" had some quantum of dealings with Belloisi via telephone in addition to the meeting the night before, and the fact that "Lester" attempted to reach Belloisi several times on the evening of his arrest before discontinuing use of his own cellular device within a couple of days after Belloisi's arrest, there is no evidence of any kind that indicates the relationship between the two concerned anything of an illegal nature, much less an international cocaine-trafficking conspiracy. The absence of such evidence is fatal to the government's case with respect to all of the charges, but in particular as to the importation charges.

Even the government's argument that Belloisi's role and active employment on February 4, 2020 placed him in a position where he must have known the international origin of the flight and thus the cocaine stashed on it, falls flat in a fair consideration of their own evidence presented to the jury. The government took great pains to emphasize that Mr. Belloisi was assigned elsewhere at JFK than the gate and terminal at which the 737 aircraft was parked. But the natural inference that would arise from that fact is that he would be *less likely* to have been generally aware of which aircrafts at which gates would have arrived from which places. Moreover, the government further introduced evidence that the aircraft was in the pre-boarding stage for a scheduled outbound *domestic* flight in less than 45 minutes at the time Belloisi entered that plane's avionics compartment. Thus, the reality of the evidence is that the plane was vastly closer to being an outbound domestic flight than an inbound international flight at the time Belloisi entered it and

then went to the avionics compartment. Accordingly, even crediting the government's completely speculative theory that Belloisi was directed by "Lester" either the night before or during their telephone communications on the afternoon of February 4, 2020 to go to that aircraft to take possession of the drugs, there is no basis or shred of evidence upon which to tack the additional feature that "Lester" also imparted to Belloisi the fact that drugs were coming in from abroad or that Belloisi had some other independent knowledge of the international origin of the drugs in question.

Assuming, *arguendo*, the Court were to find that in the light most favorable to the government, the cumulative evidence, including the first type of evidence discussing, *supra*, relating to the events at JFK on February 4, 2020, might weakly support an inference that Belloisi may have known that the avionics compartment of the aircraft in question contained drugs and that he may have entered the avionics for reasons related drug possession and distribution—but the evidence supporting such an inference still would not and could not do the further work of establishing and, in fact, fails to indicate in any manner whatsoever, Belloisi's alleged knowledge that the drugs previously the plane's avionics compartment had been on an incoming international flight some 4 hours earlier. When viewing the evidence in its totality, a rational juror could not conclude *beyond a reasonable doubt* that Belloisi had the requisite knowledge and intent that the cocaine be imported from without to within the U.S. and, thus, the convictions involving importation under the second and third counts of indictment simply cannot stand under *U.S. v. Londino-Villa*, 930 F.2d 994 (2d Cir. 1991).

## Conclusion

Upon a full review and consideration of the evidence presented to the jury at trial, it is clear that the evidence was insufficient to establish the defendant's guilt of each of the elements of any

of three (3) charges against him in the indictment. Considering the evidence in the light most favorable to the government, the evidence was patently insufficient to demonstrate both Mr. Belloisi's membership in and knowledge and intent to further the conspiracy or his knowledge and intent with respect to the international nature of the conspiracy. No rational juror could have found that the evidence, considered cumulatively created reasonable inferences of guilt with respect to these critical elements of each of the offense that eclipsed or foreclosed equally plausible inferences of innocence with respect to the charged offenses. Therefore, the jury's verdict must be found to have been irrational and against the weight of the evidence and thus Court must grant the defendant's instant motion seeking a directed verdict of acquittal on all counts.

WHEREFORE, the defense moves this Court, pursuant to Fed. Crim R. Proc. 29(c) for a judgment of acquittal on all counts in the indictment.

Sincerely yours,

_____/s/_____
David J. Cohen, Esq.
Benjamin L. Simpson, Esq.
Cohen Forman Barone, LLP.
950 Third Avenue, 11th Fl.
New York, NY 10022
Tel. (212) 766-9111
Fax: (212) 766-9166
David@cfblaw.com

To:     BREON PEACE
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, New York 11201

        Attn: Robert M. Pollack, Esq.
        Margaret Schierberl, Esq.
        United States Attorney
        Eastern District of New York