1      UNITED STATES DISTRICT COURT
       EASTERN DISTRICT OF NEW YORK
2
  - - - - - - - - - - - -  X
3
  UNITED STATES OF AMERICA, :  20-CR-219(DLI)(RLM)
4
5    -against-     :  United States Courthouse
               Brooklyn, New York
6
  PAUL BELLOISI,      :
7              April 28, 2023
     Defendant.   :  2:30 p.m.
8
  - - - - - - - - - - - -  X
9

10        TRANSCRIPT OF JURY TRIAL
     BEFORE THE HONORABLE DORA L. IRIZARRY
11      UNITED STATES DISTRICT JUDGE

12 APPEARANCES:

13 For the Government:    BREON PEACE
               United States Attorney
14            BY: ROBERT M. POLLACK
              MARGARET SCHIERBERL
15              FRANCISCO J. NAVARRO
            Assistant United States Attorneys
16            271 Cadman Plaza East
            Brooklyn, New York
17

18 For the Defendant:    COHEN & FORMAN, LLP
              950 Third Avenue, 10th Floor
19            New York, NY 10022

20            BY: DAVID J. COHEN, ESQ.
              BENJAMIN L. SIMPSON, ESQ.
21

22 Court Reporter: Michele D. Lucchese, RPR, CRR
          225 Cadman Plaza East
23          Brooklyn, New York
          (718) 613-2272
24

25 Proceedings recorded by mechanical stenography, transcript
  produced by computer-aided transcription.

1          (In open court; jury not present.)

2          THE COURTROOM DEPUTY:  Criminal cause for charge

3    conference, docket No. 20-cr-219, United States versus Paul

4    Belloisi.

5          Please state your appearances.

6          MR. POLLACK:  I'm Robert Pollack for the United

7    States, joined by my colleagues Assistant US Attorneys

8    Margaret Schierberl, Francisco Navarro, and Paralegal

9    Specialist Sophia Cronin.

10         Good afternoon, Your Honor.

11         THE COURT:  Good afternoon.

12         MR. COHEN:  For the Defendant, Paul Belloisi, who is

13   seated to our right, David Jason Cohen and Benjamin Simpson.

14         Good afternoon.

15         THE COURT:  Good afternoon.  So I want to note that

16   Agent Moloney is not here.  I don't think he would be needed

17   for the conference anyway.  The jury is not present.

18         And I guess, Mr. Navarro, you will need to leave at

19   some point; correct?

20         MR. NAVARRO:  Yes, just short of 4:00 p.m., Your

21   Honor.

22         THE COURT:  I hope we will be done by then.

23         MR. NAVARRO:  Thank you.

24         So, what I would like to do is there's a lot that is

25   not contested and that is the advantage of following the

1   procedure that I do of having everybody's input in advance for

2   what hopefully will be by and large what the jury charge is

3   going to look like.  So I just want to start going directly to

4   -- I'm going to give you the option, since, at least from our

5   perspective here, we are all distanced from you and you are

6   distanced from each other, if you want to remove your mask,

7   that's fine with me.  Other than that jury trial I'm trying to

8   protect the jury as well.  I know we are more than six feet,

9   and so on.  The jury is not here where we are taking all of

10  the measurements.  Whether that works or not, I don't know.

11          Okay.  So, I think we have the first comments and I

12  think that we are in agreement would be on page 3, paragraph

13  4, second line, change the word "them" to "him."  And the same

14  thing in paragraph 5, four lines down.  Paragraph 5 is "The

15  Presumption of Innocence," and there were some changes that

16  were proposed by the defendant.

17          Since the government hasn't had an opportunity to

18  respond, let me hear from the government.

19          So, specifically, it will be adding the language in

20  the second sentence, after the word "he," adding the word

21  "like all defendants," and then after the word "innocent

22  unless" and removing the word "until."

23          MR. POLLACK:  We don't see those as substantive

24  changes.  We think it was accurate as is, but we don't object.

25          THE COURT:  I just don't see that it's necessary.

1      MR. POLLACK:  We agree, that it is not necessary.

2 We think it was correct before.  We don't see them as

3 substantive changes.

4      THE COURT:  I don't mind changing the word "until"

5 to "unless."  I don't have a problem with that.  It is more or

6 less the same idea.  So if the government has no objection to

7 that, I will incorporated with that.

8      MR. POLLACK:  That's fine with the government.

9      THE COURT:  And then moving on further down in that

10 same sentence towards the end, the defense wants to add -- the

11 way it is written, it says, That presumption alone, unless

12 over come, is sufficient to acquit him."  Defense wants to add

13 "to mandate that he be acquitted."

14      I will hear from the government.

15      MR. POLLACK:  Similarly, Your Honor, the way Your

16 Honor had it before is an accurate statement of law.  We don't

17 see that the addition changes its meaning in a material way.

18      THE COURT:  I don't see any reason to change that,

19 and the last thing that want to do is make the jury charge

20 wordier than it needs to be.

21      MR. COHEN:  May we be heard, Your Honor?

22      THE COURT:  Yes, of course.

23      MR. COHEN:  If something is sufficient to do, it

24 doesn't require one to do it.  If I say it is sufficient for

25 you to be here at a certain time, it doesn't mean you must be

1   here at a certain time.  But in this case, sufficient is not

2   what the law says.  The law says it's not sufficient, it's

3   necessary to do it.  Logical reasoning talks about sufficiency

4   versus necessity.  When something could be necessary, which

5   that's the case here:  It's necessary to acquit him, but

6   sufficient doesn't mean one must do it.  So we think the

7   stronger language should be "necessary that he be acquitted"

8   or "mandated he be acquitted," but sufficient just means you

9   are able to do something, but doesn't require one to do

10  something.

11          MR. POLLACK:  Your Honor, may I respond?

12          THE COURT:  Yes.

13          MR. POLLACK:  There is law that jury instructions

14  need to be read wholistically, and, here, that very same

15  sentence already says, "He is presumed innocent now until you

16  unanimously find his guilt has been proven by the government

17  beyond a reasonable doubt."

18          If there is an ambiguity in the second part of the

19  sentence, which it's not clear to me that there actually is,

20  but even if Mr. Cohen is correct about an ambiguity there, the

21  first half of the sentence is actually unambiguous, so adding

22  the wordier language to the second half of the sentence I

23  think, at best, is redundant and does, as Your Honor noted,

24  attribute to the length.  And, also, sort of not to criticize

25  the five-dollar word, but just makes it a little bit more

1  complicated.

2         THE COURT:  The added language is not necessary.

3  This is a standard charge and does not require any changing.

4         Okay.  So the defendant's evidence at trial.  So,

5  the defendant has presented evidence.

6         Is that going to be the defendant's only witness?

7         MR. COHEN:  I believe so, Your Honor.  I don't

8  intend to have any other witnesses.

9         THE COURT:  I guess the question is whether you

10  expect the defendant to testify?

11         MR. COHEN:  I do not, Your Honor.

12         THE COURT:  Okay.

13         So the defendant's evidence at trial, this has to be

14  changed somewhat.

15         MR. SIMPSON:  Judge, we did have a proposal with

16  regard to what we thought the change should be in light of the

17  evidence that has come in.

18         THE COURT:  I'll hear you.

19         MR. SIMPSON:  It would be, the first sentence would

20  be untouched.  The second sentence would read "The defendant

21  did not testify, although he did present evidence on his own

22  defense in this case."  So that's what we would -- I'm sorry.

23  "On his own behalf in this case."  That would be our proposal

24  for the second sentence in light of the way the evidence has

25  come in.

1          MR. POLLACK:  We have no objection to that.

2          MR. COHEN:  Judge, may I approach the government to

3     show them something written so when we talk about it, they

4     have a visualization?

5          THE COURT:  Yes.  How about you all stay quiet for a

6     second.

7          Okay.  I propose the following:  So, towards the end

8     of paragraph 7, we are talking about now, there are two

9     alternate scenarios, right.  Since he is not expected to

10    testify, that first scenario does not apply.

11         I propose shifting the second scenario, which is

12    where the defendant presents evidence, and moving that up so

13    that it would read as follows:

14         "In a criminal case, a defendant is not obligated to

15    testify or offer any evidence on his own behalf.  Here, the

16    defendant did not testify but did present evidence on his own

17    behalf.  It is the Government's burden to prove the

18    defendant's guilt beyond a reasonable doubt.  The fact that

19    the defendant presented evidence or offered evidence" -- say

20    "offered evidence" to keep it consistent -- "does not shift

21    the burden of proof to the defendant.  That burden remains

22    with the government and never shifts to the defendant.

23         "You may not attach any significance to the fact

24    that the defendant did not testify or speculate as to why the

25    defendant did not testify.  You may not -- so I would take out

1  "or offer any evidence" because it's not relevant.

2         "You may not draw an inference of guilt from his

3  exercise of his constitutional right to remain silent.  You

4  must not consider this against the defendant in any way during

5  the course of your deliberations."

6         MR. SIMPSON:  That is acceptable to the defense.

7  Thank you, Your Honor.

8         THE COURT:  For the government?

9         MR. POLLACK:  Same, Your Honor.

10        THE COURT:  Okay.

11        So the government had no comments with regard to the

12  proof beyond a reasonable doubt.

13        The defense wanted to add, after the sentence

14  reading "the government is not required to prove the

15  defendant's guilt to a mathematical certainty," the defense

16  proposes to add the following sentence:  "However" -- I guess

17  you mean "in that regard."

18        MR. COHEN:  You're correct judge.

19        MR. SIMPSON:  Yes, Judge.

20        THE COURT:  -- "is insufficient to merely prove to

21  you the defendant is probably guilty.  But a reasonable doubt

22  -- and I really hate sentences beginning with "but" -- "but a

23  reasonable doubt is not an excuse to avoid performing an

24  unpleasant duty."

25        Let's just deal with that sentence for now.  I will

1    hear from the government.

2              MR. POLLACK:  Which sentence, Your Honor?

3              THE COURT:  The one that I just read.  It was added

4    by the defendant.

5              MR. POLLACK:  I see.

6              THE COURT:  After "the government is not required to

7    prove the defendant's guilt."

8              MR. POLLACK:  We don't think it's necessary.  I

9    think the instruction is a standard instruction.  It is

10   already accurate as it is.  It just adds an extra sentence.

11   We don't think we need it.

12             THE COURT:  Do you want to be heard any more on

13   that?

14             MR. SIMPSON:  Yes, Judge.  We think that the

15   sentence -- the preceding sentence, "the government is not

16   required to prove the defendant's guilt to a mathematical

17   certainty," we simply think that the sentence we propose that

18   follows about saying "that probably guilty is not good

19   enough," it gives the jury sort of the complete picture if

20   they want to think about it from sort of a mathematical

21   perspective that saying he's probably guilty is not enough, if

22   they are also being told at the same time it doesn't have to

23   be proven to a mathematical certainty, that it's somewhere

24   beyond probable, right?  Even if it doesn't have to be what's

25   called a mathematical certainty, that they still know that

1    it's beyond probably.  We think that's very important.

2         THE COURT:  I know you think it is very important.

3    This charge is a standard charge.  It has gone up on appeal

4    and has received the stamp of approval from the Second

5    Circuit.  So I'm not changing it to add language that is,

6    frankly, going to muddy the waters and confuse them when you

7    engage in mathematical and then probabilities.  I think that

8    that is far more confusing.

9         And with that said, at the end, the defense wants to

10   add "should the prosecution fail to prove the defendant's

11   guilt on any element of any charged defense, you must find the

12   defendant not guilty on the basis of the presumption of

13   innocence."

14        I'm not adding that.  The presumption of innocence

15   has already been discussed upfront.  And not only that, after

16   each count in the indictment -- for each in the indictment

17   with respect to the elements charged, I make it very clear and

18   repeat each time to the jury that the government must prove

19   each and every element of the charged crime beyond a

20   reasonable doubt for them to find the defendant guilty.

21        And if they find that the government has not proven

22   any one or all of the elements, that they must find the

23   defendant not guilty.  I think that that is repeated

24   abundantly throughout.  So that's just not necessary at that

25   point.

1    There was a portion that the defense deleted to

2   substitute that sentence and I'm not deleting that.  That is

3   the portion that says, "If, after a fair and impartial

4   consideration of all of the evidence or lack of evidence, you

5   honestly can say you have such a doubt that would cause

6   prudent persons to hesitate to act in matters of importance in

7   their own lives, then you have a reasonable doubt and, in that

8   event, you must find the defendant not guilty."

9    I have to tell you that I had defense attorneys

10  fight to get that language in there and this charge has gone

11  up on appeal after the inclusion of all that language that the

12  defense proposes to delete, and it has been approved.

13   Plus, my charge repeats abundantly throughout that

14  the government's proof is beyond a reasonable doubt.

15   MR. SIMPSON:  May we be heard?

16   THE COURT:  About what?  About deleting that

17  section?

18   MR. SIMPSON:  One portion.  We think there are two

19  portions --

20   THE COURT:  The second portion says, "If, on the

21  other hand, after a fair and impartial consideration of all

22  the evidence or lack of evidence, you honestly can say that

23  you have such an abiding belief in the defendant's guilt that

24  you would be willing to act upon a similarly strong conviction

25  in important matters in your own lives, then you do not have a

1  reasonable doubt and, in that circumstance, you must find the

2  defendant guilty."

3          The charge has to be a balanced charge.

4          MR. SIMPSON:  Well, Your Honor, that is why we

5  actually proposed to take both out because we understand it

6  has to be balanced.

7          THE COURT:  Denied.

8          MR. SIMPSON:  Judge, may I please make a very brief

9  record about why we think the second part should be taken out?

10          THE COURT:  I'm not taking out a second part and

11  including the first part.  No.

12          MR. SIMPSON:  May I state on the record the reason

13  why the defense is objecting to not taking out the second

14  part?

15          THE COURT:  To taking it out, you mean?

16          MR. SIMPSON:  Yes.

17          The problem for the defense is that the second part

18  is what is often referred to as the go-forward language,

19  right.  And the defense's position -- and this is echoed in a

20  recent Pennsylvania Supreme Court decision *Drummond* --

21          THE COURT:  Seriously.

22          MR. SIMPSON:  Judge, it's one sentence.  I want to

23  read one sentence.

24          "Not only does the average person not require proof

25  beyond a reasonable doubt before making important decisions in

1   his or her life, but often people press forward even though

2   they harbor serious doubt and uncertainty, particularly when

3   changing jobs, buying houses, or assisting in the health

4   decisions of loved-ones."  The defense agrees with this

5   language and feels that that is the basis of our objection to

6   this go-forward language of this charge.  We just want that on

7   the record, Your Honor.

8            THE COURT:  Does the government wish to be heard?

9            MR. POLLACK:  Your Honor, we think this is the --

10  the deleted language is standard language.  It's been affirmed

11  before.  It's correct as a matter of law and should be

12  included.

13           THE COURT:  Defense request is denied.

14           I hardly doubt that a State Court decision within

15  the Third Circuit, no less, is binding precedent or persuasive

16  precedent, for that matter, on this Court when the Court has

17  reviewed many Second Circuit decisions, as well as the Sand's

18  jury instructions with respect to that charge, which itself

19  has been reviewed on appeal.

20           Okay.  With respect to the next section, which is

21  the evidence, there was not much.  The government had nothing

22  in that section.  At the very end, right before the discussion

23  of direct and circumstantial evidence, the paragraph beginning

24  "In reaching your decision as to whether the government

25  sustained its burden of proof," at the end, the defense

1  proposes adding beyond a reasonable doubt on all the elements

2  of each offense charged.

3        I will hear from the government.

4        MR. POLLACK:  Your Honor, it's not necessary.  It's

5  already repeated many times in the necessary portions

6  throughout the jury instructions.  Also, the sentence begins

7  with "All persons are entitled to a presumptions of innocence"

8  right after talking about "race, religion, national origin,"

9  et cetera.  To add extra language beyond that sort of shifts

10 the topic of the sentence away from the importance of

11 impartiality with respect to race, religion, and so on, into a

12 restatement of burden of proof, which is already discussed

13 elsewhere.  So I think it just add words and makes less clear

14 what that sentence is really about.

15       THE COURT:  This is surplusage and it's not

16 necessary.

17       The defense wanted to add a hyphen between

18 decisionmaking, and I am not a fan of hyphens, so it's not

19 going in there.  That's a millennial thing.  I don't care for

20 that.  Actually, there are older than millennials that do that

21 too, but that's beside the point.

22       And I think both agree.  The next thing is

23 stipulation.  I didn't see any other changes.

24       The Court agrees, there is an "S" after the word

25 "accepts" in the third line.  That "S" comes out.

1    Okay.  Deciding what to believe:  Paragraph 11.

2    I think we have had all males testifying here.

3    MR. COHEN:  While we deleted it originally, Your

4    Honor, what the Court just stated on the record, that they are

5    all his and we all saw that, it seems appropriate that it

6    should be his as the pronoun to that.

7    THE COURT:  I just thought that one way of making it

8    completely gender neutral and something that I may not have to

9    change in the next trial if I have a mixed bag of men and

10   women testifying, or maybe all women.  I propose to change it

11   in the following way:  "You may consider the demeanor of the

12   witness on the stand and the manner in which the witness

13   testified," and then it avoids all those potential issues --

14   MR. COHEN:  No objection from the defense.

15   THE COURT:  -- somewhere down the road.

16   There should be "did the witness have" -- the

17   defense wants to edit paragraph C.  It reads, in the original,

18   "Did the witness have a personal interest in the outcome of

19   the case?"

20   The government left that alone.  Defense proposes

21   "did the witness have an interest, personal or otherwise, in

22   the outcome of the case?"

23   I will hear from the government on that.

24   MR. POLLACK:  Your Honor, I'm not exactly sure what

25   this is intended to include that isn't already included.  A

1  non-personal interest seems to be not an interest.  I don't

2  know what is left out if the language is as Your Honor had it.

3         THE COURT:  I don't see any reason to insert in

4  there "personal or otherwise."  Did the witness have an

5  interest?  It's up to the jury to decide what kind of interest

6  that is based on the testimony.

7         MR. SIMPSON:  Judge, the reason why we proposed

8  "otherwise" with regard to the interest is that clearly there

9  was one witness that was paid by the government to be here,

10  right, so it was not -- I wouldn't think of that interest as

11  being personal interest.

12        THE COURT:  You don't think that's a personal

13  interest?  It's a personal economic interest.  That's

14  ridiculous.

15        MR. SIMPSON:  Right.  It's a pecuniary interest.

16  Exactly.

17        THE COURT:  You know what?  You have done this

18  throughout this case.  You're splitting hairs here.  It seems

19  to me that the more you start getting into the weeds to

20  sifting out those kinds of details for the jury, you're

21  intruding on their province.  Let the jury decide what kind of

22  interest it is.

23        Did they have an interest?  Well, that would include

24  all kinds of interest.  It could be money.  It could be pro

25  law enforcement.  It could be -- I don't know -- anything

1    else.  So I don't think that that's necessary.

2         And the same thing with the change proposed in

3    paragraph D.  Again, the government had no comment.  Defendant

4    proposes to add at the end to the sentence "A contradiction

5    may be an innocent lapse of memory or it may be an intentional

6    falsehood" and wants to add "or anywhere in between."  I don't

7    know what that is supposed to be.

8         I will hear from the government.

9         MR. POLLACK:  I would object to that, Your Honor.  I

10   think that that suggests that there is something in between an

11   innocent lapse of memory and an intentional falsehood.  Those

12   seem to me, as I understand it, to be kind of fairly binary to

13   one or the other.  I don't know that there is something in

14   between innocent lapses of memory and intentional falsehoods.

15   I think it is correct as it is and should be left alone.

16        MR. SIMPSON:  The defense feels, actually, the

17   opposite.  We don't think it is binary.  We think it is a

18   continuum.  We think that in between an innocent lapse of

19   memory and an intentional falsehood there could be something

20   as a memory that is designed to be sort of faulty.  We think

21   there could be sort of an intentional lack of memory and we

22   feel that that came out during the questioning of certain

23   witnesses.  So we think that the jury shouldn't be presented

24   with a binary option here; they should be presented with the

25   idea that it could be a continuum.

1      MR. POLLACK:  Your Honor.  I would respond that an

2  intentional lapse of memory is an intentional falsehood.

3  That's already captured by the language.

4      MR. SIMPSON:  Not necessarily intentional.

5      THE COURT:  Okay.  Enough.  Enough arguing back and

6  forth.

7      The requested language is denied.

8      MR. COHEN:  Judge a question on C.

9      THE COURT:  Yes.

10     MR. COHEN:  Does it remain does the witness have

11 personal interest because I heard you say an interest is an

12 interest or is it --

13     THE COURT:  No.  Did the witness have a personal

14 interest in the outcome of the case?  So it stays as

15 originally.

16     MR. COHEN:  Thank you for the clarification.

17     THE COURT:  Yes.

18     So I made the same kind of change that I made for A

19 for E.  So instead of "he" or "she," I changed it to "the

20 things the witness testified about."

21     MR. COHEN:  No objection.

22     THE COURT:  Just to keep it clean, so to speak.

23     The defense had a request to add "was the testimony

24 plausible" after the question "was the testimony logical."

25     Does the government wish to be heard?

1          MR. POLLACK:  Yes, Your Honor.  We believe it is

2     redundant of G.  G already says that the jury may consider the

3     probability or improbability.  We think that captures the

4     concept of plausibility and there is no need to add extra

5     words.

6          THE COURT:  I agree.  It's already covered by G.

7          So that's denied.

8          Going to the next paragraph beginning with

9     "different people" on the fourth line, defense wanted to add

10    the words "or not" after be reconciled, in other words, the

11    phrase would be modified as follows:  "You will have to

12    consider whether any apparent discrepancies may be reconciled

13    or not."

14         The government?

15         MR. POLLACK:  I think saying "whether" or saying

16    "whether or not" is a stylistic difference.  The defense has

17    chosen a stylistic difference of adding more words.  My own

18    stylistic preference is to have fewer words, but I don't see

19    it as a substantive change.  I don't see any reason to add it.

20         THE COURT:  I don't see any point to or not.  If you

21    say "whether," there are two choices there, at least two

22    choices, which would not require a change then in the next

23    sentence.  It says, "If, however, that is not possible, then

24    you must decide which testimony, if any, you will accept."  It

25    is a different alternative.  They have to decide what the

1  testimony says and then whether they can accept it or not.  So

2  I don't see that a change there is necessary either.

3          And then moving down with respect to "Consider,

4  therefore, whether it has to do with an important fact, or

5  only a small detail factor," and the defense wants to add "or

6  only an irrelevant or insignificant detail."

7          Does the government wish to be heard?

8          MR. POLLACK:  Your Honor, we think it was better the

9  way it was.  Small includes things that are irrelevant and

10  insignificant.  It also includes things that are just small

11  but may not be totally irrelevant.  It gives the jury more

12  room.  I think it's appropriate.  It's an accurate statement.

13  I don't see any reason to just remove a simple word to make it

14  more complicated than two longer words.

15          MR. COHEN:  May I explain our position, Judge?

16          THE COURT:  Yes.

17          MR. COHEN:  Whether it has to do with an important

18  fact, important facts are both large and small.  I think the

19  contradiction here is supposed to be does it have to do with

20  an important fact or a fact that is not important, which would

21  be irrelevant or insignificant.  A small fact could also be an

22  important fact, so there's an argument that is redundant, and

23  in order to juxtapose an important fact with an unimportant,

24  we chose the words "irrelevant" or "insignificant."

25          THE COURT:  I'm going to modify that somewhat, so

1    the sentence will reads as follows:  "Consider, therefore,

2    whether it has to do with an important fact or an

3    insignificant detail."

4              Is that okay with the government?

5              MR. POLLACK:  We have no objection, Your Honor.

6              THE COURT:  Okay.

7              Defense.

8              MR. COHEN:  Yes, Your Honor.  Thank you.  Yes, it's

9    okay.

10             THE COURT:  I'm splitting the baby, so to speak.

11             Okay.  So, I also just want to make sure that we're

12   on the same page as to those proposed charges that the Court

13   proposed and inserted, if applicable.  I just want to make

14   sure that we are all on the same page, that we agree that it

15   is applicable.

16             Interviewed witnesses.  It talks about attorneys

17   being able to prepare their case, and so on, in talking to the

18   witnesses.

19             It also has the paragraph, the second paragraph

20   says, "Both the government and the defense has the same power

21   to subpoena witnesses to testify on their own behalves.

22   However, you should remember my instruction that the law does

23   not impose on a defendant in a criminal case the burden or

24   duty of calling any witness or producing any evidence.

25             The defendant seeks to delete that.

1          I do note that you add it somewhere else down the

2   line.  I don't know why you deleted that.

3          It is the state of the law and it is a reminder that

4   the defendant doesn't have a burden.

5          (Continued on next page.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  (Continuing.)

2          THE COURT:  I don't know why it was deleted.  What's

3  the point of deleting it?  I've always had that in there.

4          MR. SIMPSON:  Judge, we'll withdraw that deletion,

5  request a deletion.

6          THE COURT:  Okay.

7          The government didn't comment on that, so I assume

8  it's okay with the government?

9          MR. POLLACK:  We think it should be included,

10  Your Honor.

11          THE COURT:  Okay.  So, prior inconsistent

12  statements, my recollection is, and I'm happy to hear from the

13  parties about this, is that the only person who was questioned

14  about prior inconsistent statement and, specifically, the

15  hearing testimony was Officer Robinson.  So we have here, you

16  know, witness or witnesses made a statement or statements.

17          So I don't know how the parties want to deal with

18  that.

19          MR. COHEN:  Your Honor, while we're thinking about

20  this, looking at my notes now, the reason that we put in the

21  deletion beforehand was because there was no testimony about

22  it, and I don't think -- the defense witness was not

23  subpoenaed, but there was no testimony about anyone being

24  subpoenaed.

25          While we know that one of the American Airlines

1  witnesses for the government was, in fact, subpoenaed, we

2  didn't go into that.  I know oftentimes, an attorney will

3  cross-examine, are you here on your will or were you

4  subpoenaed here.  So we deleted it because there was no

5  discussion of subpoenaing the witnesses.

6         THE COURT:  Well, the thing is, there was -- you

7  know, I don't know to what extent the summation is going to

8  address anything about other investigators and so on.  I mean,

9  the elephant in the room is Special Agent Moloney who was part

10  and parcel of the proceedings and he wasn't called.  So, I

11  mean, this is standard language in every case.

12         MR. COHEN:  That's -- I'm explaining to why we

13  deleted it because -- I mean, I don't believe we would have

14  had to subpoena any of the law enforcement officers, but that

15  was the reason.  The only witness who was, in fact, subpoenaed

16  was an American Airlines employee, but we chose not to ask

17  about his subpoena or his -- and Ricci was not subpoenaed

18  either.  So we brought it up for that reason, because there

19  was never a discussion about subpoenaed witnesses, but you're

20  correct about the elephant in the room, obviously.

21         THE COURT:  Okay.  And the point is that they should

22  not be speculating.  Okay.

23         So, the prior inconsistent statements.

24         MR. POLLACK:  Your Honor, we're unsure yet of

25  whether there may be -- we still have cross-examination to do

1   on Monday.  We expect we may have a short rebuttal case and

2   may have some additional witnesses, so I don't want to yet

3   commit to the singular here.  It might be plural.

4              THE COURT:  Okay.  So we will have to revisit it,

5   but I just want to note that neither side had any objection to

6   that particular instruction, and I think it has to be given,

7   at least at the minimum in connection with Officer Robinson,

8   right?  I think we're agreed on that?

9              MR. POLLACK:  That is correct, Your Honor.

10             THE COURT:  I know that we still have evidence to

11  come out and that could also add additional charges.  I don't

12  want to be inflexible about it, but I just do want to try to

13  have it in as final of form so we don't keep the jury waiting

14  unnecessarily pre-charge.

15             All right.  Statements of the defendant.  So, the

16  way I had originally drafted it, I had it as paragraph 14, the

17  government didn't have any changes.  The defense proposes in

18  lieu of the word -- the term "law enforcement authorities" to

19  use "law enforcement officers."

20             Thoughts?  Government?

21             MR. POLLACK:  We have one - a special agent who's

22  not an officer.  I mean, he -- the technical distinction, in

23  some sense he was an officer, I guess we all are, we're

24  officers of the court but I mean, "law enforcement

25  authorities" is a more inclusive term, although I don't know

1   that there is a significance one way or the other.

2         THE COURT:  Well, he is an agent and another is an

3   officer.  So, I mean, it's the same thing.  They're going to

4   understand what it is.

5         MR. SIMPSON:  Your Honor?

6         THE COURT:  Yes.

7         MR. SIMPSON:  We would be comfortable with the use

8   of the word "agents," but what we're not as comfortable with

9   is the use of the word "authority" because it sort of -- it

10  connotes the idea that there's some, perhaps, created credence

11  to that person's station.  So we think that "officer" and

12  "agents" if we want to be specific, "agents" is the correct

13  term.  As an "authority," we just think that that's

14  something --

15        THE COURT:  A CBP officer is not an agent.  He's an

16  officer.  That's his title.

17        MR. SIMPSON:  Right, and then -- so this was a law

18  enforcement agent, is what actually the statement was to.

19        THE COURT:  No, that's not true.

20        MR. SIMPSON:  Oh, no, no.  It was Robinson who was

21  an officer --

22        THE COURT:  Correct.

23        MR. SIMPSON:  Gabay is an agent.

24        THE COURT:  There is a combination of agents and

25  officers to whom statements were made.  Frankly, I think it

1   sounds worse if you say "made statements to law enforcement

2   officers and agents."

3          MR. SIMPSON:  "Authorities."  Thank you.

4          THE COURT:  I'm just looking -- playing devil's

5   advocate here, putting on my every day person hat, so.

6          Okay.  With respect to the next sentence, which

7   reads:  The government claims that in some of these

8   statements, the defendant admitted certain facts charged in

9   the indictment.

10          The defense proposes to insert the language:  The

11   government claims that in some of those statements, the

12   defendant admitted certain facts relevant to the charges in

13   the indictment.

14          MR. POLLACK:  In this case, Your Honor, we agree

15   that there are -- the defense's suggestion makes it more

16   accurate.

17          THE COURT:  I think so, too.  Okay.  So that's

18   granted.

19          Then moving down further, the next to last statement

20   where it says:  Whether each statement was made and whether it

21   was, in fact, voluntarily and understandably made.

22          That's the original language.  The defense proposes

23   to state -- to add:  In fact, whether it was voluntarily,

24   knowingly, and intelligently made.

25          Any objections to that change?

1          MR. POLLACK:  Yes, Your Honor.  That -- first of

2     all, using technical legal language that may -- that's an

3     issue that comes up often in suppression matters to be decided

4     by a Court.  What this is about, really, is deciding the

5     weight and not whether a particular legal standard is met as

6     one -- as a judge would decide in a suppression hearing.  So I

7     think "voluntarily" is a more ordinary word and I think --

8          THE COURT:  Well, he agrees.  "Voluntarily" is in

9     there.  He's not adding the word "voluntarily."  What he's

10    adding is "knowingly and intelligently" as opposed to

11    "understandingly made."

12         MR. POLLACK:  I under -- I apologize for speaking

13    unclearly, Your Honor.  I think the adding of "knowingly and

14    intelligently" in place of "understandingly" replaces common

15    words that regular nonlawyers understand, with words that are

16    familiar to us as lawyers because of the legal standard is

17    applicable in some context, but not this one.  It just makes

18    it is more wordy and confusing.  "Voluntarily and

19    understandingly" is clearer and accurate.

20         THE COURT:  Do you want to be heard?

21         MR. COHEN:  Not beyond the reasons that --

22         THE COURT:  I'm sorry?

23         MR. COHEN:  Oh, I'm sorry.  I suppose you asked us

24    if we wanted to be heard?

25         THE COURT:  Yes.

1      MR. COHEN:  No, not beyond what the requested change

2  was.

3      THE COURT:  I'm sorry?

4      MR. COHEN:  Do we want to be heard in response to

5  what Mr. Pollack said?  Maybe I misunderstood your question,

6  Mr. Pollack.

7      MR. POLLACK:  My question?  I didn't have a

8  question.

9      THE COURT:  No.  My question is whether the defense

10  wants to respond to what the government said, which is,

11  basically, leave it as it was in the original.

12      MR. SIMPSON:  Judge, I think -- we think "knowingly

13  and intelligently," even though it's an additional word or

14  two, actually is -- provides a better explanation.  We think,

15  "understandingly" is a bit of a strange word and may confuse

16  the jury more than the words "knowingly and intelligently."

17  We actually think those are more -- more accurately capture

18  than "understandingly" and may cause confusion.

19      I personally don't use the word "understandingly" in

20  any context, so I wouldn't know exactly what that means.

21      THE COURT:  Am I supposed to you use as the standard

22  upon which to make my decision?

23      MR. SIMPSON:  No, Your Honor.

24      THE COURT:  I'm sorry, you just invited that

25  question.

1       MR. SIMPSON:  Maybe I shouldn't have included my

2    personal anecdote.  It's our belief that the word

3    "understandingly" is a confusing word sitting out there, and

4    that "knowingly and intelligently" explain it better.

5            THE COURT:  The charge that's included by the Court

6    is taken directly from Sand.  It's Instruction 5-19 under the

7    section for Admissions and it cites:  Authority from the

8    United States Supreme Court, the First Circuit, Second

9    Circuit, Fifth Circuit, Seventh Circuit, Eighth Circuit, and

10   Ninth Circuit.  It is exactly the same wording:  Whether, in

11   fact, it was voluntarily and understandingly made.

12           MR. COHEN:  And, Your Honor, I know you're going to

13   consider the second part of that requested change and we used

14   the word "recorded," but it was not recorded.  We should have

15   had the word "recorded" state "recounted."

16           THE COURT:  I didn't hear you.  I'm sorry.

17           MR. COHEN:  I'm sorry.  On the last phrase within

18   that same sentence --

19           THE COURT:  Right, whether it was recorded

20   accurately by law enforcement officers.

21           MR. COHEN:  We should have used the term "recounted"

22   instead of "recorded," because the statement, according to the

23   witness, there was no testimony that it was recorded.

24           THE COURT:  Correct.

25           MR. COHEN:  It was whether it was recounted

1    accurately.  So our request is as it stands there, except

2    changing the word "recounted" for "recorded."

3            THE COURT:  That request is denied because, again,

4    the charge, which is directly from Sand, also includes the

5    language in Sand:  I instruct you that you are to give the

6    statements such weight as you feel they deserve in light of

7    all the evidence.

8            So it's not necessary to get into anything extra,

9    and, so, we're going to run into the same issue for the second

10   part of that:

11           The defense asked to remove the term "out of court

12   statements."

13           Any objection to that?  I don't really have a

14   problem with removing the term "out of court."

15           MR. POLLACK:  We have no objection, Your Honor.

16           THE COURT:  Okay.  And then we run into -- well, in

17   the way the charge is written, it does not say "to law

18   enforcement authorities or officers."  It just says, "There

19   has been evidence that the defendant made certain statements."

20   So the defense was looking to add the same language as before,

21   "to law enforcement officers."  So either it's consistent or

22   it stays out.

23           MR. COHEN:  And by "consistent," Your Honor means we

24   should have "authorities" instead of "officers" --

25           THE COURT:  Correct.  So, which would you prefer,

1  just to be clear?

2        MR. COHEN:  Have "authorities" to keep it

3  consistent.

4        THE COURT:  Okay.  Then, the defense seeks to change

5  the next sentence, the original reads:  The government claims

6  that these statements in which the defendant sought to

7  exonerate or exculpate himself are false.

8        The defense seeks to have it read as follows:  The

9  government claims that these statements in which the defendant

10 provided an innocent explanation for his conduct are false.

11       Frankly, I think that that's inaccurate because the

12 statements included taking food which is not an innocent act

13 based on what everybody has said in the testimony, but I'll

14 hear from the government.

15       MR. POLLACK:  I agree with Your Honor.  And I'll

16 also note that the context of this sentence, and really this

17 whole section, is built in with the framework of what the

18 government claims.  So, it is -- it is true that the

19 government claims that those statements are statements in

20 which he sought to exonerate or exculpate himself are false.

21 But I think the way Your Honor had it is correct and it should

22 stay the same.

23       MR. COHEN:  The reason for the change, Your Honor,

24 is "exonerate and exculpate himself" are, obviously, much more

25 legalistic terms.  And while we do take note that "innocent"

1    would not be innocent as to American Airlines, it seems to

2    clear -- the purpose of this paragraph is talking about, and

3    for the whole charge for that matter, "innocent" as related to

4    the charges in the indictment.

5          So exchanging "innocent explanation or sought to

6    exonerate or exculpate himself," it was -- our position is

7    that, for the jury, it would be less confusing.

8          MR. SIMPSON:  Judge, also as to the government's

9    notation that this entire paragraph is sort of, from the

10   perspective of the government, that's made clear by the

11   context -- by the words "are false" coming after the disputing

12   section.  It seems to us this middle portion of this sentence

13   is actually sort of an objective characterization of what the

14   statement was and, so, we feel that the idea of "innocent

15   explanation" fits better than "sought to exonerate or

16   exculpate himself."

17         THE COURT:  No, I think quite the opposite.  There's

18   a statement there that sort of seems to imply that I am

19   categorizing the statement as an innocent explanation for his

20   conduct, which would be inappropriate because this is an

21   affirmative statement in which the defendant provided an

22   innocent explanation for his conduct.

23         That is making an evaluation of the statement,

24   whereas the charge as written says:  In which the defendant

25   sought to exonerate or exculpate himself.  The government

1  claims that these statements in which the defendant sought to

2  exonerate or exculpate himself are false.

3          All right, so here is an alternate proposal:  Rather

4  than using either the wording in the original or the entire

5  proposed new language, inserting, "In which the defendant

6  provided an explanation for his conduct."

7          MR. COHEN:  That's acceptable to the defense, Judge.

8          MR. POLLACK:  We have no objection, Your Honor.

9          THE COURT:  Okay.  Just so that you hear it all

10  together:  "The government claims that these statements in

11  which the defendant provided an explanation for his conduct

12  are false."

13          Is that okay?

14          MR. POLLACK:  Yes, that's fine with the government,

15  Your Honor.

16          MR. COHEN:  Yes.

17          THE COURT:  Okay.  All right.

18          Then there were changes that were offered by the

19  defense to -- not the next sentence, but the one after that.

20  The original reads:  "This is because it is reasonable to

21  conclude that an innocent person ordinarily would not find it

22  necessary to invent or fabricate an explanation or statement

23  tending to show his innocence."

24          The defense seeks to add, "That an innocent" --

25  well, "Act or an innocent person ordinarily would not find it

1  necessary to," the defense adds, "provide a false that's

2  followed by explanation or statements tending to show his

3  innocence."

4          So they're changing, after the word "necessary," to

5  add "to provide a false."

6          Government?

7          MR. POLLACK:  We see this as an, essentially, a

8  stylistic change.  I think "providing false" means the same

9  things as "invent or fabricate."  In this case, I think that

10  stylistic change makes it simpler.  So I mean, I actually do

11  agree with the defense suggestion for this one.  I don't think

12  it changes the meaning, but it does make it less wordy and

13  easy to understand.

14          THE COURT:  All right.

15          Then the sentence following in the original says:

16  "However, you may not rely on this evidence alone to support a

17  finding of guilt."

18          The defense adds, after the word "however; even in

19  the event that you find the defendant provided an untrue

20  statement, you may not rely on this evidence alone."

21          MR. COHEN:  Your Honor, maybe we can modify it --

22          THE COURT:  I don't see that it's necessary to

23  change the wording because actually, in the way it is in the

24  original, in essence what it's telling the jury whether they

25  find he made the statement or not, they cannot rely just on

1  that evidence to find him guilty.  I don't see a need to

2  change this.

3           And then the defense had changed "to show that the

4  defendant believed" --

5           MR. COHEN:  We'll withdrawal that, Your Honor.  I'm

6  sorry to interrupt you.

7           THE COURT:  Yes.  Withdraw which one?

8           MR. COHEN:  The one that says -- took out "he was"

9  and put in "they were."

10          THE COURT:  Yes.

11          MR. COHEN:  We think "he was" makes more sense.  It

12  should remain as it was in the original in our opinion.

13          THE COURT:  Okay.  I wasn't going to change it any

14 way.

15          So, law enforcement witnesses.  We have

16 CBP Officer Michael Robinson, officers I should say Journael.

17 I don't think he used the term "Gary" during the course of the

18 testimony.

19          MR. POLLACK:  He didn't use it in his testimony.  I

20 believe when he stated his name for the court reporter, he did

21 say --

22          THE COURT:  Did he say that?  I don't remember.

23          MR. POLLACK:  It may be our mistake that we included

24 the quotation marks.  It was my belief that "Gary" is what --

25 is what he goes by, but he said that when he stated his name.

1          THE COURT:  Okay.  We don't need the quotation

2    marks, Cambry, and Department of Homeland Security

3    Special Agent Sean Gabay.

4          You said that that there's a possibility that that

5    could change on Monday?

6          MR. POLLACK:  It could change on Monday.

7          THE COURT:  Okay.  And we're all in agreement with

8    that language, that's the standard language.  So, I am not

9    putting retired New York City Police Department Sergeant.  He

10   will just be Darryl Valinchus.  And he had a far more

11   complicated speciality when we presented him to the jury.

12   Although this is probably a lot easier to understand, what the

13   government has in here, which the defense did not modify in

14   any way, "An expert in the field of historical cell cite and

15   location data and forensic cell phone extraction."

16         MR. COHEN:  We do not.

17         THE COURT:  I think "cell phone" is two words,

18   actually.

19         MR. COHEN:  I didn't mean to interrupt.

20         THE COURT:  That's okay.

21         MR. COHEN:  We didn't modify it because we didn't

22   know what he would ultimately testify to.

23         THE COURT:  Yes.

24         MR. COHEN:  I do agree he testified to something

25   much more.  I use the term granulous or extravagant, and we

1   believe whatever he testified to would be appropriate to put

2   in here.  I don't have the exact terminology, but whatever it

3   is, I believe it should be in here.

4            MR. POLLACK:  I believe the missing piece is

5   something like "geo-spacial visualization."

6            THE COURT:  I have -- that's when I asked you to

7   slow down, I remember, because it was a mouthful.

8            Okay, so this is what I have, "cell phone data

9   analysis and geo-spacial visualization."  We will have the

10  transcript on Monday if we -- I don't think we have it yet.

11           THE CLERK:  I'm sending it to you right now.

12           THE COURT:  Geo-spacial visualization of cell phone

13  location data.  We can check that against the transcript on

14  Monday.

15           MR. COHEN:  Your Honor, we know that you want to

16  check the transcript, but we stand by whatever it says in the

17  transcript is what we did not object to and we think that

18  that's what we --

19           THE COURT:  Yes, and I tried to write it down

20  exactly as he was declared an expert in.

21           MR. POLLACK:  We're all in agreement it should match

22  the transcript.

23           THE COURT:  So what I read into the record, and my

24  trustee popped up the digital transcript and that's exactly

25  what it is, okay?  All right.

1    So, the defense added, at the end of the Expert

2  Witness Instruction, language about lay witness.  So let me

3  hear from the government about that.  I assume that this is in

4  connection with Mr. Ricci?

5    MR. SIMPSON:  Yes, although Mr. Ricci was, we

6  believe, stating his opinions that were --

7    THE COURT:  I mean, he didn't give much by way of a

8  --

9    MR. SIMPSON:  Not really.  To the extent he did, it

10  was counter to the opinions --

11    THE COURT:  So let me back up because you actually

12  make a good point, and what I had originally intended was to

13  come and ask you what lay witnesses are you talking about and

14  what opinions are you talking about.

15    MR. SIMPSON:  So, we were talking about certain

16  opinions expressed by Officer Cambry, by Captain LeRuth, I

17  believe even --

18    THE COURT:  Those are law enforcement officers.

19    MR. SIMPSON:  No, no, LeRuth is the captain from the

20  airplane.  He's not a law enforcement officer.

21    THE COURT:  Right, right, LeRuth was the pilot.

22    MR. SIMPSON:  Right.  We're talking about sort of

23  opinions about what one would do in certain scenarios in terms

24  of, you know, alarms, things malfunctioning, there being

25  certain caution warnings --

1      THE COURT:  That's not opinion testimony.  That's

2   not different from, I don't know, asking a store clerk, you

3   know, if you were given a $100 bill, how would you provide

4   change for that?  Well, I don't know, it depends on what

5   happens to be in the cash register.  If we have plenty of 20s,

6   I might give him 20s.  If we have mostly 10s, I might use 10s.

7   I mean --

8      MR. SIMPSON:  Okay.

9      THE COURT:  And I've never given a lay witness

10  opinion testimony in the normal course of a case, which is

11  kind of what you're asking for here.

12     MR. COHEN:  Withdraw the request.

13     THE COURT:  You'll withdraw?

14     MR. COHEN:  Yes.

15     THE COURT:  Okay.  So that takes us to Similar or

16  Bad Acts, okay?  The government had no -- the government

17  had --

18     MR. POLLACK:  We --

19     THE COURT:  Well, actually, I'm sorry, you did have

20  some changes to the second paragraph.

21     MR. POLLACK:  I'm sorry.  I didn't understand the --

22  where is Your Honor referencing?

23     THE COURT:  So, there are edits to --

24     MR. POLLACK:  Oh, I see --

25     THE COURT:  -- to each paragraph.  The government's

1   edits come in the second paragraph, the defense comes in the

2   first paragraph.

3          MR. POLLACK:  That's right, Your Honor.  We -- we

4   made edits in anticipation of what the other bad act would be,

5   if in our judgment and the Court's judgment, if the defense

6   opened the door.  That didn't end up happening, we didn't put

7   on that evidence.  So I think the whole -- I think the whole

8   paragraph 17 or section 17 can just be removed.

9          MR. COHEN:  We agree.

10         MR. POLLACK:  I'll only add to that, unless there's

11  some argument of stealing food qualifies as a bad act I think

12  that's perhaps a judgment call, but we won't request the

13  instruction based on that.  What we were contemplating was

14  other illegal acts, which did not come into evidence.

15         THE COURT:  Okay.  So you both agree that that comes

16  out.  The only -- I guess the only reason why I pause is this

17  evidence about taking food and snacks, and there's been some

18  testimony by the pilot, by Mr. Ricci, and then the statements

19  that were made by the defendant to the officers.

20         MR. POLLACK:  That's right.  And I suppose the

21  instruction is broad enough to include prior bad acts or

22  crimes.  Obviously, we have not -- we wouldn't have a federal

23  you case out --

24         THE COURT:  Yes.  I mean, I suppose this charge

25  actually relates to prior bad acts or crimes that somehow

1  relate to the charges in the indictment?

2         MR. POLLACK:  Right.

3         THE COURT:  Which does not include stealing food?

4         MR. POLLACK:  I think that's correct, Your Honor.

5         THE COURT:  All right.  So, so long as you're both

6  comfortable with removing that, we'll get rid of that.

7         MR. COHEN:  We are, Your Honor.

8         THE COURT:  Okay.

9         Character Evidence, there was no specific character

10  evidence here, and the only reason why I didn't say

11  anything -- I didn't touch anything is because I didn't know

12  what the defense was going to do.

13         MR. COHEN:  And right before I finished by direct

14  examination of Mr. Ricci, I spoke with Mr. Pollack and told

15  him I expected him to ask about his relationship with

16  Mr. Ricci and Mr. Belloisi, and I told him the questions I was

17  going to ask and asked him if he believed we were opening the

18  door.  Mr. Pollack said he didn't believe so, so I asked those

19  questions if he knew him.  So it's our position 18 should be

20  out, as well.

21         MR. POLLACK:  We agree, Your Honor.

22         THE COURT:  You agree?  Okay.

23         MR. POLLACK:  And we thank defense counsel for

24  having asked us that question before asking the witness.

25         THE COURT:  Okay.  Well, every little bit helps to

1    make things more smoothly, so I appreciate the parties

2    talking.  It always helps.

3            Everybody agrees to get rid of, "Impeachment by

4    prior convictions."  I am just curious as to why the defense

5    seeks to remove "mere association is not enough."

6            MR. SIMPSON:  Judge, I think the reason for the --

7    why we wanted to remove is the ending of sentence, right, from

8    the fact that he's associated with other people who were

9    guilty of wrongdoing, there -- there has been no evidence that

10   the people, even though he, you know, it's shown he was

11   associated in some way with this individual Lester, there's no

12   evidence that Lester was guilty of any wrongdoing whatsoever.

13   So it's sort of telling the jury that Lester is guilty of some

14   wrongdoing without there being any evidence.

15           It's only Lester's connection to the defendant in

16   which there can be any inference that the Lester did anything

17   wrong.  We understand that's the government's theory, but

18   there's no evidence to it with respect to Lester having

19   committed any wrongdoing.

20           THE COURT:  Government?

21           MR. POLLACK:  Your Honor, I think it is, although we

22   don't think there's a problem with including it, that

23   instruction sort of makes more sense in cases where there's

24   evidence of, like, gangs or people who are associating with

25   other criminals.  That's not really in this case.

1          THE COURT:  So you agree?

2          MR. POLLACK:  So we have no objection to removing

3     it.

4          THE COURT:  Okay, all right.  We'll take that out.

5          And then, "No Speculation about Uncharged Persons."

6     There was no change per se, but there was a question in

7     defense counsel's request to charge.

8          The question is:  "What does this mean regarding

9     whether we can comment on no Lester or other defendants.  Can

10    we ask Leo's, if anyone else was charged."

11         MR. COHEN:  That might have been a mistake on our

12    part, Your Honor, and as I think one of the --

13         THE COURT:  This sounds like stream of consciousness

14    notes.

15         MR. COHEN:  Not only does it sound like it, it reads

16    the same exact way.

17         THE COURT:  So am I correct that the charge stays as

18    is?

19         MR. COHEN:  You are correct.

20         THE COURT:  Okay.

21         MR. SIMPSON:  Judge, we did have a proposal based on

22    the way the evidence has come in with -- that was not made in

23    our initial proposal.  With respect to the end of the second

24    sentence of this charge:  "The reason now you may not draw any

25    inference favorable or unfavorable towards the government or

1   the defendant from the fact that certain persons are not on

2   trial before you," the defense feels that that gives the

3   impression that the only way the jury could have seen, in

4   particular Lester, as in his codefendant, however, you know,

5   Lester could also have come here as a witness called by either

6   parties.  So we think that the end of that sentence should

7   read, "are not on trial who did not appear as witnesses before

8   you."

9

           (Continued on the following page.)

1  (Continuing)

2           MR. POLLACK:  May I respond, Your Honor?

3           THE COURT:  Yes.

4           MR. POLLACK:  That's the next instruction.  Number

5  20 is "uncalled witnesses is equally available."  I don't

6  think it make sense to add language into "uncharged person"

7  which is about uncharged persons.

8           THE COURT:  Correct.

9           This is specifically talking about the government's

10 ability to bring persons to trial.  That has nothing to do

11 with defendant's ability to call somebody as a witness.  So it

12 is apples and oranges, and then the uncalled witness charge

13 deals with it.

14          So this is where I said the defense inserted that

15 both sides have the ability to subpoena.  That's already

16 covered in paragraph 12.  So I don't think that it's necessary

17 to repeat that again.

18          MR. COHEN:  And so then the Court's prior ruling, we

19 would remove that request.

20          THE COURT:  Okay.  So defense wants to add an "and"

21 and make this one very long sentence and I'm not doing that.

22          MR. SIMPSON:  Withdrawn, Judge.  I think that just

23 may have been us playing with the paragraph and not leaving it

24 the same way that it was initially.

25          THE COURT:  Okay.

1        Photographs, we have no problems.  I think everybody

2   is okay with that.  Charts and slides, everybody is okay.

3        Transcripts of recorded conversations comes out.  I

4   think everybody agrees about that.

5        Yes?

6        MR. POLLACK:  Your Honor, I think you skipped

7   paragraph 21.  The defense had a --

8        THE COURT:  I'm sorry.

9        MR. POLLACK:  Section 21, "All available evidence

10  need not be" --

11       THE COURT:  Yes.  I have it as 23.  The paragraphing

12  has -- it's 21 on the defendant's.

13       The only change was to add -- the defendant wanted

14  to add after "The burden of proving a defendant's guilt beyond

15  a reasonable doubt always rests with the Government."  That's

16  how it is in the original.  The defense wanted to add as to

17  each element of each charged offense, but that's just

18  redundant with what the jury is going to hear in the

19  substantive charge section, and they will hear it a lot.

20       We had charts and summaries.  I don't know about

21  slides.  I don't know if you are planning to use slides on

22  summation.

23       MS. SCHIERBERL:  Yes, Your Honor.

24       THE COURT:  Okay.  So the transcripts of recorded

25  conversations is gone.

1          One question is there was a text message that was in

2     Spanish that the parties stipulated to a translation.

3     Normally, there is a charge that is given to the jury that if

4     -- it is usually for recordings and so on, that if they hear

5     something in a language that they may be familiar with, they

6     have to go by the translation that's before them and not their

7     own understanding of what it means.

8          Generally, it reads something like this:  Some of

9     the testimony you heard in this case was given in Spanish,

10    then translated into English by an interpreter.  If you are

11    fluent in Spanish, you may have understood perfectly the words

12    the witness spoke.

13         We would need to modify this to be consistent with

14    what we have.

15         However, you must rely solely upon the translations

16    provided through the interpreter and not the actual words

17    spoken in Arabic or your understanding of what they meant.

18    You must assess the witness' testimony based only upon the

19    English translation so that all the jurors will decided the

20    case on the same footing and no one will set him or herself up

21    as an expert in the Arabic language.

22         So something like you heard testimony about a text

23    message that was in the Spanish language and the parties have

24    stipulated to the translation of that text into the English.

25    If you are fluent in Spanish, you may have perfectly

1  understood the words in that Spanish-language text.  However,

2  you must rely solely upon the stipulated translation provided

3  by the parties and not your understanding of what the language

4  in the text means.

5          MR. POLLACK:  The Government has no objection.

6          THE COURT:  Something like that.  I will try to

7  fine-tune it in as articulate a way as I can.

8          I can include that as Spanish language evidence

9  directly under stipulation so that it kind of makes sense with

10 the stipulation, since it was part of a stipulation.  It

11 didn't come in through a witness.  If that's okay with

12 everybody.

13         MR. SIMPSON:  And it's also in exhibits that are in

14 evidence as well, so they can look at the actual message

15 itself, in addition to just the stipulation, maybe not combing

16 through testimony.

17         THE COURT:  No.  The problem is that even if they

18 look at the message and they know Spanish, they can't be

19 making a translation on their own.  That's the point of the

20 charge.  They have to go to the stipulation.  The stipulation

21 is in evidence.

22         MR. SIMPSON:  Right.

23         THE COURT:  So they can look at the stipulation.

24         Although, I am a fluent Spanish-speaker and the

25 translation seemed perfect to me, so I don't see anybody

1   having any real dispute as to what it says.

2           MR. COHEN:  To the extent that you can marry the

3   stipulation to the actual -- one text message in Spanish in

4   your instruction, we are perfectly in agreement with it.

5           THE COURT:  Okay.  So I will put that in directly

6   under the stipulation section so that it flows in what the

7   evidence shows.

8           Okay.  So, "Use of evidence pursuant to search," the

9   defendant added to the language that the Government added "The

10  defendant."  So "searches conduct of the defendant" and then

11  the language that the government provided:  "The defendant's

12  cell phone, cell phone data maintained by the cell phone

13  service provider."

14          What is the general consensus about how to write

15  cell phone?  Because I've seen it both ways.  Two words or one

16  word?

17          MR. POLLACK:  I do whatever Microsoft doesn't

18  underline.

19          MR. SIMPSON:  Me too.  I've seen it both ways all

20  over the place.

21          THE COURT:  We've created a generation of

22  automatons.

23          MR. SIMPSON:  Guilty.

24          THE COURT:  I'm kidding with you all.  I will see

25  what I can determine one way or the other.  I have seen it

1   down both ways.

2          Any objection, the Government, to adding "the

3   defendant"?  I think that's accurate.  There was a search of

4   the defendant.

5          MR. POLLACK:  We have no objection.

6          THE COURT:  Okay.

7          It says, A cell phone service provider."  There was

8   only one cell phone service provider?

9          MR. POLLACK:  T-Mobile was the only.

10         THE COURT:  Okay.

11         "Particular investigative techniques," and the

12  defense added again defendant's guilt of each of the elements

13  of the crimes charged."  I don't think that is necessary.  It

14  repeats again "The Government has proof beyond a reasonable

15  doubt."

16         "No investigation," the defense added "You are also

17  not to bring any tools or devices beyond that which is

18  provided to you as properly received in evidence into the

19  process of your individual and collected deliberations."  I

20  have no idea what that means.

21         MR. COHEN:  Then we have no problem withdrawing it.

22         THE COURT:  They are not taking anything back there

23  other than documentary evidence.  Any testimony that they ask

24  for, I generally -- the parties will go through it.  The

25  Government is very good at redacting objections and all of

1   that, the sidebars, all of that sort of stuff, and, obviously,

2   no contraband goes back there.  And they will have to come out

3   here to view any of the video clips.  They're not given

4   laptops or anything like that.  And they get four copies of my

5   jury instructions.  You saw that in my jury instructions.

6            Can we take a five-minute quick break?

7            MR. POLLACK:  Yes, Your Honor.

8            THE COURT:  We are going to get to part two.  There

9   isn't really a whole lot that I saw in part two.

10           MR. SIMPSON:  No, Judge.  We inserted something in a

11  number of places that we were already admitting were incorrect

12  for us to request and ask to take out.  The overt act

13  requirement should not be in any of this.

14           THE COURT:  Okay.  That's the first thing I was

15  going to go into.

16           MR. SIMPSON:  We recognized that mistake.  I was

17  actually going to bring that up right before trial started and

18  you said that wasn't the time.

19           THE COURT:  I remember.  Okay.

20           MR. SIMPSON:  It shouldn't have been in.

21           THE COURT:  Sounds good.

22           (Recess taken.)

23           THE COURT:  Please have a seat, everyone.

24           So the first thing that I had object part two, the

25  Government added the word "the" in front of defendant five

1  lines down.  I think everybody agrees with that, including the

2  Court, so that will go in.

3          And then the next thing is the defense has added

4  some wording for the definition of intentionally.

5          This is wording with respect to the presumption of

6  innocence and no obligation to present evidence and the

7  government's burden of proof.  I don't think that any of that

8  is necessary.  That's already been given.

9          The Government?

10          MR. POLLACK:  We agree.

11          THE COURT:  Anything else to add about that, Mr.

12  Cohen?

13          MR. COHEN:  Nothing.

14          THE COURT:  Okay.  And then as to person's state of

15  mind, the defense put "their."

16          MR. COHEN:  We suggested replacing the word "his"

17  with "their."

18          THE COURT:  No, it is one person.

19          MR. SIMPSON:  Judge, I think as I read the sentence

20  it seems to be talking about -- it's making reference to in

21  everyday affairs you're frequently called upon to determine a

22  person's state of mind.

23          THE COURT:  Right.  "A person's state of mind."  A

24  person is not a their.

25          MR. SIMPSON:  We were thinking, therefore, it's not

1   gender normative of saying his or her or his or it could be

2   her's.  There is sort of gender neutral.

3           THE COURT:  No. I am not doing the person is a

4   plural thing.  I don't mind saying from his or her words.

5           MR. SIMPSON:  Fine.

6           MR. COHEN:  It's fine.  We weren't saying -- I agree

7   with you, not making a person plural.  It's just when we were

8   saying a person's state of mind and how to determine a

9   person's state of mind from that particular person's actions

10  is what we are trying to say "their" meant.  But if want to

11  leave it, it is semantics, and that's fine.

12          THE COURT:  I can change it to the person's words

13  and actions.

14          MR. COHEN:  Whatever reads best for the Court.

15          THE COURT:  But a person is not a their.  It is a

16  him or a her.  Okay.  So we've gone through that.

17          Now we get to the conspiracy.  The defense has -- I

18  just want to make sure I'm on the same page because the

19  paginated change.  Bear with me one second.

20          So the Government made a change under "Existence of

21  Agreement," fourth line, remove "A-N-T" after the word

22  "important," so it is just to import.

23          MR. POLLACK:  That is correcting a typo, I believe.

24          THE COURT:  That's fine.

25          And then with respect to -- so the defense has

1  withdrawn the overt act language.

2        MR. SIMPSON:  Anywhere it appears in this.

3        THE COURT:  That comes before the existence of the

4  agreement.

5        MR. SIMPSON:  Right.

6        THE COURT:  Okay.  So back to the "Existence of the

7  Agreement" in the paragraph beginning "Of course," the defense

8  wishes to add the word always, so that instead of reading

9  direct proof may not be available, it will say direct proof

10 may not always be available.  I don't see why that's even

11 necessary.

12       MR. POLLACK:  The Government agrees.  I think it

13 adds a word but it doesn't change the meaning, so it is better

14 not to add the word.

15       THE COURT:  It's just not necessary.

16       Then the defense wants to add "therefore, you may"

17 --  in the sentence beginning, "Therefore, you may infer,"

18 after the word "infer, if non-direct evidence sufficiently

19 proves it to you, the existence of a conspiracy from the

20 circumstances and the conduct of the parties involved," taking

21 out the word "of this case" after circumstances."

22       I'll hear from the Government.

23       MR. POLLACK:  I think the extra words don't anything

24 but words and make it more confusing.  The way it was before I

25 think is correct and should stay the same as Your Honor had

1    it.

2          THE COURT:  This is another charge that has gone up

3    and down the Circuit a number of times and I don't see that

4    this adding anything at all other than making it more wordy

5    and perhaps confusing.

6          MR. COHEN:  With the understanding, Your Honor, that

7    you're denying the first additional words.  As to the second

8    words that we're asking to remove, the reason that we're

9    asking to remove "of this case" because the beginning of the

10   paragraph talks about conspiracy in general and then the

11   second -- I'm sorry -- the third sentence starting off with

12   "therefore" narrows it down to "of this case," but it talks

13   generally about conspiracies, so I don't believe "of this

14   case" is appropriate to have in there, as does the following

15   sentence talks generally about conspiracy sister.

16          THE COURT:  I'll hear from the Government.

17          MR. POLLACK:  We don't object to removing the words

18   "of this case."

19          THE COURT:  But there is like something missing.  So

20   the existence of a conspiracy from the circumstances, we could

21   say "of the case."

22          MR. COHEN:  What about, Your Honor, "the

23   circumstances and the conduct of the parties involved as it

24   stands" without "of this case"?

25          MR. POLLACK:  Would it be clear to add the word

1  "surroundings circumstances"?

2         MR. SIMPSON:  I was going to suggest "relevant

3  circumstances."

4         THE COURT:  So, again, this is a charge that comes

5  directly from Sand.  That is relying on cases from the Supreme

6  Court, well-established from the Supreme Court, First Circuit,

7  Second Circuit, Fifth Circuit, Sixth Circuit, Seventh Circuit,

8  Eighth Circuit, Ninth Circuit, Tenth Circuit.

9         I don't see any reason to change it.

10        MR. POLLACK:  We are happy to keep it as is, Your

11 Honor.

12        THE COURT:  It is a standard charge, so that remains

13 the same.

14        And defense added the word "maybe" for "often."

15 Again, this charge comes directly from Sand.  I don't see any

16 need to change it.

17        MR. COHEN:  Just for the record, Your Honor, in the

18 second sentence of that paragraph that starts with "however,"

19 it talks about a conspiracy, direct proof may not be

20 available, but here it says -- changes it to actions often

21 speak louder, and we think being consistent with actions may

22 often speak louder is consistent with the second sentence in

23 the same paragraph.

24        MR. POLLACK:  Your Honor, may I respond?

25        THE COURT:  Yes.

1          MR. POLLACK:  Any actions may speak louder than

2     words and actions often speak louder than words are mere

3     synonyms, but actions may often speak louder than words is

4     redundant.  The language as it appears in Sand is appropriate.

5          THE COURT:  The word "may" is not necessary.

6          MR. COHEN:  Our request would be to have "may" in

7     there and "often" out.

8          THE COURT:  Denied.

9          And then next to the end of that section, the

10    defendant changes the word "participants" to

11    "co-conspirators."  Again, the wording in the original comes

12    directly from Sand's.

13         MR. POLLACK:  Your Honor, may I add to that?  As it

14    is in Sand's makes more logical sense because this sentence is

15    about determining whether an agreement exists, so it shouldn't

16    be presupposed even there are co-conspirators in determining

17    whether an agreement exists, which is to say in determining

18    whether there are co-conspirators you may consider the acts,

19    conduct, and statements of the participants.

20         THE COURT:  That request is denied.

21         "Next is membership in the conspiracy."  So the

22    language in the original says knowledge and intent may be

23    inferred from the secretive or irregular manner in which the

24    activities are carried out.

25         Again, this charge is a standard Sand's charge that

1    has been used in every one of my conspiracy cases that has

2    gone up on appeal and affirmed.

3           The defense wants change that to "knowledge and

4    intent may be inferred from an individual's actions."

5           MR. SIMPSON:  Judge, we will withdraw that.

6           THE COURT:  Okay.  And then at the end of the next

7    paragraph, again, we are still in membership in the

8    conspiracy, so this is the paragraph beginning "in order for

9    the defendant," at the end of that paragraph, defense adds

10   just the same:  "If you find that the defendant did not have

11   such an interest, that is a factor you properly may consider

12   in making that determination."

13          That's just repetitive of what is said before.  The

14   paragraph reads "In order for a defendant to be deemed a

15   member of a conspiracy, he need not have a stake in the

16   venture or its outcome.  While proof of a financial or other

17   interest in the outcome of a scheme is not essential, if you

18   find that the defendant did have such an interest, it is a

19   factor you properly may consider in determining whether or not

20   the defendant was a member of the conspiracy charged in the

21   indictment."

22          So this is not adding anything other than making it

23   repetitious.

24          MR. POLLACK:  The Government agrees.

25          MR. COHEN:  In the next paragraph, Your Honor, we

1  will remove both requests for the change of the pronouns.

2          THE COURT:  Okay.  That request is denied.  I'm not

3  changing pronouns.

4          MR. COHEN:  Similarly, in the paragraph starting

5  with the "extent of the defendant's participation in the

6  conspiracy," we move or withdraw our request to change the

7  pronouns in there as well.

8          THE COURT:  Okay.

9          Then the word "may" is added in the sentence

10 beginning "some conspirators."

11         It reads in the original, "Some conspirators play

12 mayor roles while others play minor parts in the scheme."  So

13 the defense has added the word "may."  "Some conspirators may

14 play major roles, while others may play minor parts."

15         I don't see that that is adding anything to this.

16 And, again, this is a standard charge.

17         That request is denied.

18         With respect to the sentence beginning, "I caution

19 you," the sentence reads "I caution you, however, that a

20 defendant's mere presence at the scene of an alleged crime by

21 itself does not automatically make him a member of the

22 conspiracy."  Defendant has removed the word "automatically."

23 I would like to hear why you want to remove that because,

24 again, that's part of the standard charge.

25         MR. SIMPSON:  Judge, I think the reason to remove it

1  is it seems the instruction would imply it would be natural

2  for the jury to automatically believe that he's member of the

3  conspiracy, thus requiring the sentence, and we think that

4  there is no reason to sort of suggest that would be an

5  automatic conclusion the jurors would make.  So by taking that

6  out, it doesn't sort of create the false conclusion that the

7  sentence is intended -- you know -- is trying to dispel.

8           THE COURT:  I should think that the word

9  "automatically" helps the defense rather than hurt it.

10          The government's position?

11          MR. POLLACK:  Your Honor, it is a standard

12  instruction.  We didn't ask for it to be changed.  We're happy

13  with it as it is.

14          We also note the defense did not remove the same

15  word in almost the same context two sentence below.  Our

16  suggestion would be to leave it as it is.  But we don't object

17  if Your Honor wishes to remove it.

18          THE COURT:  The request is denied.

19          MR. COHEN:  Judge, if I may, as to our next request

20  after "the Government has rested," we remove the first

21  sentence that starts from our requested change, "it is not

22  enough that they simply met."  We remove that request and just

23  our only request is that it starts with "you must determine

24  there was a plan to commit the crimes charged."  So while we

25  had two sentences initially, we are just asking for one.

1       THE COURT:  And that's denied because I will be

2   explaining to them what the object crimes are.

3           In addition to that, it's explained more fully and

4   more accurately in the next paragraph, which reads, "I further

5   caution you that mere knowledge or acquiescence without

6   participation in the unlawful plan is not sufficient.  The

7   fact that the acts of a defendant without knowledge merely

8   happened to further the purposes or objectives of the

9   conspiracy does not make the defendant a member.  More is

10  required under the law.  What is required is that the

11  defendant must have participated with knowledge of at least

12  some of the purposes or objectives of the conspiracy and with

13  the intention of aiding in the accomplishment of those

14  unlawful ends."

15          And then the rest goes into the substantive crimes

16  and defines what the object of those crimes are.

17          Just lumping them together like that I think it's

18  confusing and not necessary.

19          That is denied.

20          (Continued on next page.)

21

22

23

24

25

1    (Continuing.)

2         THE COURT:  Okay.  So, the government had submitted

3    a letter withdrawing the amount of the drugs involved.  So I

4    don't see any objections from the defendant on those, so those

5    adjustments will be made.

6         MR. COHEN:  And in the interest of expediency,

7    Your Honor, many of what comes afterwards are overt acts,

8    which we improperly included in the initial changes, as well

9    as pronoun changes all of which we withdraw.

10        THE COURT:  Okay.  Thank you.

11        I don't understand what the defense is deleting with

12   respect to -- sometimes you put in your deletes underneath,

13   after what you actually want to delete.

14        Am I right that what you wanted to delete was the

15   amount?

16        MR. SIMPSON:  Us?

17        THE COURT:  Yes.  I have a delete under, "Title 21

18   United States Code Section 846 makes it a crime for any person

19   to," I think what you wanted to delete was the amount, right?

20        MR. SIMPSON:  This wasn't our deletion, though.

21        MR. POLLACK:  Your Honor, I think that if I'm -- if

22   I'm --

23        THE COURT:  I'm looking at the defendant's requested

24   charge.

25        MR. POLLACK:  Is this the top of page 32?

1    THE COURT:  It will be the top of page 32 on your
2  copy.
3    MR. POLLACK:  I believe that's a deletion of a
4  paragraph symbol.  Perhaps there was an extra paragraph there.
5    THE COURT:  No, there was no paragraph.  I don't
6  know what's being deleted.
7    MR. POLLACK:  I think if I recognize the Microsoft
8  word code there, it says deleted.
9    THE COURT:  It's a paragraph sign, but there's no
10  paragraph.
11    MR. POLLACK:  I think it may have just been, like, a
12  blank line on the original Word Document, not a substantive
13  change, in any event.
14    MR. COHEN:  Well, to the extent there was anything
15  from the defense, then it is withdrawn.
16    MR. SIMPSON:  Yes, to the government's version.
17    THE COURT:  I think that's a reference to the amount
18  --
19    MR. SIMPSON:  Yes.
20    THE COURT:  -- right?
21    For some reason, your edits come -- they're not in
22  line with the actual paragraph.  They seem to show -- it may
23  be a function of the way Word works.  So that's how I've
24  interpreted thus far.
25    MR. SIMPSON:  Okay.

1    THE COURT:  Okay.  I just wanted to make sure I'm

2  not missing something.  That's all.

3    MR. SIMPSON:  Thank you, Judge.

4    THE COURT:  Okay.  The defense, under the first

5  element, adds, "On or about February 2020."  I don't

6  understand why that's in there.

7    MR. SIMPSON:  Withdrawn.

8    THE COURT:  Okay.  And then, second; that's the

9  language that you were deleting, Mr. Cohen, "the knowing it's

10  object and helping to intending help accomplish it?"

11    MR. COHEN:  I think we're deleting "knowingly and

12  intelligently" and exchanging "knowing it's object and

13  intending to help accomplish it."

14    THE COURT:  No, that's not -- no.  So unless I hear

15  otherwise, with respect to the edits that the government made

16  deleting the amounts, the defense has agreed to those changes

17  and I will adjust the charge accordingly.

18    MR. COHEN:  Correct.

19    THE COURT:  Okay.  So I just want to be clear on the

20  record about that.

21    The Overt Act thing was withdrawn, the same thing on

22  what's on defendants page 33 about the Overt Act.

23    MR. COHEN:  Correct.

24    THE COURT:  The use -- and just, the definition of

25  "Distribution," the defense seeks to add, "delivery of a

1   controlled" -- I'm sorry, "of an object.  In this case, that

2   object is a controlled substance."  That's just unnecessary

3   and not part of the definition.

4           MR. SIMPSON:  Withdrawing that, Judge.  Sorry.

5           THE COURT:  Okay.  And then we've got more pronouns

6   and other stuff in here that I don't know what you want do

7   with.

8           MR. COHEN:  On the top of what's defense page --

9           THE COURT:  And I say, "you" because these are on

10  the defense side.

11          MR. COHEN:  What's on top of page 35, on the defense

12  copy, there are five deletions with suggested additions.

13  We'll withdraw them all.

14          THE COURT:  Okay.  Is that for everything on page

15  35?  On your page 35?  The pagination changed a little bit, so

16  I'm referring to page 35 in the defense copy.

17          MR. SIMPSON:  So the next paragraph starts with "in

18  considering?"

19          THE COURT:  Yes, right.

20          MR. SIMPSON:  Okay.  I think we'll maintain our

21  request for the change to include, "part of what you are

22  considering."

23          THE COURT:  I'll hear from the government.  Again,

24  this is a standard charge.

25          MR. POLLACK:  Your Honor, I don't understand what

1 | factually this change alters.  I think it was clear, as it was

2 | before, and we would suggest that the Court leave it as it

3 | was.

4 |         MR. SIMPSON:  Judge, in that pocket, we do withdraw

5 | the request with pronoun changes as we had --

6 |         THE COURT:  Yes, that's noted.  I'm not addressing

7 | that --

8 |         MR. SIMPSON:  Okay.

9 |         THE COURT:  -- it's there are other words that are

10 | deleted, like the word "essentially" and "get."

11 |         MR. SIMPSON:  We maintain that -- the request for

12 | those.

13 |         THE COURT:  Why?

14 |         MR. SIMPSON:  Frankly, just we think it's more

15 | clearly stated as we have suggested.

16 |         THE COURT:  I disagree.

17 |         No, I think that this change is somewhat the

18 | definition.  And, again, this is --

19 |         MR. COHEN:  From the defense, everything that

20 | remains --

21 |         THE COURT:  Just one second.  I don't see any reason

22 | for changing the language.

23 |         MR. COHEN:  Are you taking about the word "highly"

24 | being removed, Your Honor?

25 |         THE COURT:  I'm talking about, "Part of what you are

considering is whether he tried to possess the controlled

substance for their -- for his personal use."

So you deleted the words "essentially" and "get."

Whether he tried to get the controlled substance for his

personal use.  This is in the context of "considering whether

the person attempted to possess."  It's not part of what they

are considering.  The word is "essentially" what you are

considering.

In fact, the word "essentially" could be left out

and "part of what" could be left out and just say, "In

considering whether a person attempted to possess a controlled

substance with the intent to distribute it, you are

considering whether they tried to get the controlled

substance," and just leave the "essentially" and "part of

what" out altogether.

Okay?

MR. SIMPSON:  That's fine.

MR. POLLACK:  No objection.

THE COURT:  All right.  Bear with me for one second.

Okay.  I think that finishes with that page, right?

MR. COHEN:  The only other -- we had a deletion of

the words "highly" and then --

THE COURT:  Oh, okay.  In the sentence, "For

example."

MR. COHEN:  Correct.

1      THE COURT:  What's the problem with the word

2  "highly?"

3      MR. SIMPSON:  The problem with the word "highly,"

4  from our perspective, Judge, is that it seems like it's

5  essentially -- and although it says, "you may consider," it

6  strongly indicates how that consideration should come out.  By

7  saying "highly unlikely," it just -- it seems like it kind of

8  answers the question that the jurors are considering.

9      THE COURT:  I don't agree with that at all.

10      I'll hear from the government.  What's your position

11  on that?

12      MR. POLLACK:  Your Honor, I would have thought that

13  the valence runs the other way, that the defense would prefer

14  it to say "highly" because the jury is being told it may

15  consider whether it would be highly unlikely to purchase a

16  large quantity of a controlled substance or possessed it for

17  personal consumption.  The jury might think, well, it's

18  likely, but it's not highly unlikely, and so we'll err on the

19  side of finding that perhaps it was personal consumption.  I

20  mean, to say that it's -- they may consider that it's highly

21  unlikely.  In my mind, that sort of raises the bar of what the

22  quantity needs to be in order to show that it's not for

23  personal consumption.

24      So don't -- I don't think we object to removing it,

25  but I wouldn't have asked to remove it because I would think

1   that the defense would want it.

2          MR. COHEN:  We'll withdraw the request.  Mr. Pollack

3   has sufficiently convinced us.

4          THE COURT:  Okay.

5          MR. COHEN:  And for the record, Your Honor,

6   everything else that we have from this point on is withdrawn.

7          THE COURT:  Everything else?

8          MR. COHEN:  Correct.

9          THE COURT:  Okay.

10          MR. SIMPSON:  It's all related to the overt acts

11   mistakes or its pronouns or it's minuscule, and so we'd agree

12   with the government's changes.

13          THE COURT:  Okay.  So does that take us to -- all

14   the way to the end of Part Two?

15          MR. POLLACK:  I think that takes us to the end of

16   the document, Your Honor.

17          THE COURT:  That takes us to the end of the

18   document?

19          MR. COHEN:  That's it.

20          THE COURT:  All right.

21          Just think about how it was in my day when I tried

22   cases, the only way to do a charge conference was to sit

23   through the judge reading the charge and go page by page with

24   no copy of it in front of you.  So we are in a bit of a better

25   world in that regard.

1          All right.  So, game plan so that I can let our

2    young lady reporter go home, game plan for Monday, 9:30, is

3    the continuation of Mr. Ricci and possible rebuttable by the

4    government.

5          Can you estimate, in any way, what you think is

6    going to -- how long that's going to take us?

7          MR. POLLACK:  Your Honor, I think the

8    cross-examination, we anticipate will be under half an hour.

9    We are trying to determine --

10          THE COURT:  Well, there may be redirect.

11          MR. POLLACK:  That's true.  If that goes relatively

12    quickly and the defense rests, I anticipate there's a fairly

13    strong chance that we'll put on a rebuttal case.  That will be

14    no long witness, but between one and three very short

15    witnesses.  When I say "very short" some may be less than ten

16    minutes, five minutes.  It's hard to predict because of cross

17    everything so far has taken longer than we anticipated.

18          THE COURT:  All right.

19          MR. POLLACK:  Yes, we certainly expect that our

20    entire rebuttal case would be under an hour and a half with

21    not including cross-examination.

22          MR. SIMPSON:  Judge, it's unclear, the defense

23    doesn't not understand exactly what the government's rebuttal

24    case would be about.  We believe Mr. Ricci's testimony simply

25    addressed facts that were raised through the government's own

1   witnesses.  So it's unclear to us what exactly would be the

2   rebuttal, but certainly that's up to the government to

3   determine and put forward.

4          THE COURT:  It's up to the government.  We'll see.

5   And then, obviously, the defendant would be entitled to a

6   surrebuttal I suppose.  I don't know whether you're expecting

7   anything like that.

8          MR. COHEN:  Again, to echo Mr. Simpson's position, I

9   believe that Mr. Ricci testified to everything that the

10  government had the opportunity to put forth on their direct

11  case, so I don't know what they would rebut that they didn't

12  already have the opportunity to put forward.  And we would

13  object to rebuttal cases on issues that they had the

14  opportunity to put forward on their direct case.  So I'm not

15  sure that I would know what our surrebuttal would be on.

16         THE COURT:  Okay.  So let's assume, for argument's

17  sake, that we get done at some point during the day prior to

18  3:00 o'clock in the afternoon.  Be prepared to sum up.

19         That being said, how long can you guesstimate

20  summations to be?  I better not hear an hour because I will

21  pull a Judge Sprizzo on you guys so fast.

22         Well, Mr. Cohen may have appeared before

23  Judge Sprizzo.

24         MR. COHEN:  You know, Your Honor, I appeared before

25  you many times in State Supreme Court.

1          THE COURT:  I thought you looked familiar.

2          MR. COHEN:  I had more hair on my head and less on

3    my face.

4          THE COURT:  And I didn't have the grey, so.  But you

5    never appeared before Judge Sprizzo?

6          MR. COHEN:  Maybe on an occasion, but not to ever

7    see a judge lose -- lose it in a way that you're suggesting.

8          THE COURT:  No, it's not that he lost it.  It's that

9    he would ask counsel, how long do you expect your summations

10   to be, and, of course, the government has the right to a

11   rebuttal, and you would say 30 minutes, and he would say, so

12   you're going to go for ten minutes, and that was it.  There

13   was no discussion.  And, you know, how long is your rebuttal,

14   15 minutes or 20 minutes.  Five minutes.  And he didn't care

15   if you were the defense or the government, and that was that.

16   And he timed you.  And it's like Appeals Court, if you're not

17   done, you're cut off.

18          I'm not going to do that, but I find you lose a

19   jury's interest definitely once you start going past 20

20   minutes and 30 minutes.  This is a short case.  So just a word

21   to the wise.

22          So having preambled that, what's the government's

23   guess?

24          MS. SCHIERBERL:  In an abundance of caution,

25   Your Honor, I will guess 45 minutes, but I expect it will be

1    close to half.

2         THE COURT:  Oh, no.  I'm assuming that you're

3    including your rebuttal in that 45-minute total?

4         MS. SCHIERBERL:  Yes, Your Honor.  I expect about

5    maybe 30 minutes to sum and maybe ten to 15 minutes to rebut.

6         THE COURT:  Defense?

7         MR. COHEN:  It certainly would not be longer than

8    that, Your Honor.  And, so, we are -- I know you are trying to

9    plan for Monday and want it as efficient as possible, if we

10   were offered a surrebuttal, it would be on issues that the

11   government would bring up that we wouldn't know about.  So to

12   the extent the government is going to share what it is that

13   they expect to put rebuttal on, I would like to line up

14   anybody that I believe was appropriate for a surrebuttal.

15        Again, the reason that I didn't was that I don't

16   think a rebuttal is appropriate because we think there were no

17   new issues raised on Mr. Ricci's testimony.

18        THE COURT:  Well, one thing I appreciate is that

19   counsel have been very good about conferring with each other,

20   and, obviously, to the extent that it's feasible to do so

21   under the circumstances, I encourage you to do that so that

22   everybody can figure out what you're going to do.  I'm of the

23   belief that you're at the point that you start the trial,

24   that's it, there are no secrets anymore, so.

25        MR. POLLACK:  We -- Your Honor, we have been of the

1  view that there are no secrets since long before trial began.

2  I'm sure defense counsel will represent we have been extremely

3  transparent with them from day one.

4          Of course we do not intend to continue our direct

5  case, our Case in Chief.  We are going to be putting on

6  rebuttal evidence, supposing we do, I'm not certain if we

7  will, but I think it's likely, we will not go beyond the scope

8  of what the defense presented in the defense case.

9          We can -- you know, we obviously have -- we only

10 learned of the defense case late the night before we saw it,

11 so it's -- we're still figuring out ourselves.

12         THE COURT:  Well, sometimes the defense doesn't know

13 until the very end either.  But, in any event, I do want,

14 since I assume that you all are going to be thinking about

15 your summations over the weekend, I just -- I have a set of

16 instructions that I like to give.  I'm very super

17 superstitious about it because the one time I didn't give it,

18 it blew up in my face so I just give it.

19         So, some of these things, I do not expect to apply

20 to you all, but like I've said, out of an excess of caution

21 and out of partly superstition, I'm going to give it to you:

22         You have to refrain from expressing any personal

23 belief and becoming witnesses yourselves; you may not voucher

24 for the testimony of witnesses or for the integrity of the

25 office; again, avoid name-calling or direct or indirect

1  insults, I'm not expecting that from this group here; refrain

2  from appeals to emotion, sympathy, fear, or prejudice.

3         There were a lot of comments in the opening

4  statement about the amount of time that it took from

5  defendant's arrest to get to trial.  Please don't comment on

6  that.  That is absolutely irrelevant.  There are many reasons

7  that that is the case, Covid being a huge part of it, so

8  please do not do that.  And a lot of commentary about the big

9  powerful Federal Government machine.  That, also, is not

10  appropriate.  Doesn't mean to say that you can't comment on

11  the investigative techniques available to the Federal

12  Government.  Obviously, that's fair game, but you should not

13  suggest to the jurors that they hold out or refuse to

14  deliberate or that their duty is to due justice or defend the

15  public trust or make any other similar improper suggestion

16  regarding the function of the jury or make any reference to

17  the sentence that may be imposed.

18         Okay.  So now that I've gotten that out of my system

19  and you have an idea of what areas to stay out of, so have a

20  good weekend and I will see you all on Monday.

21         MR. POLLACK:  Your Honor, may I ask one question?

22         THE COURT:  Yes, sir.

23         MR. POLLACK:  In connection with the potential for a

24  rebuttal case, we have attempting to get documents and

25  potentially any likely testimony from American Airlines.

1  They, obviously, are not under our control.

2          THE COURT:  Right.

3          MR. POLLACK:  If we need to request a so-ordered

4  subpoena from Your Honor, what's the most efficient way for us

5  to get that from the Court?  Would it be the chamber's e-mail

6  address or some other --

7          THE COURT:  Yes, chamber's e-mail address.

8  Irizarry_Chambers@nyed --

9          THE CLERK:  Irizarry_Chambers@nyed.uscourts.gov.

10  I'm sorry, I just drew a blank.

11          MS. SCHIERBERL:  Thank you, Judge.

12          MR. POLLACK:  Thank you, Judge.

13          THE COURT:  Yes, and you can copy both of my law

14  clerks and they can give you the spelling of their -- you can

15  also copy Christie.

16          MR. POLLACK:  Right.

17          THE COURT:  Okay.

18          MR. POLLACK:  Thank you, Judge.

19          MS. SCHIERBERL:  Thank you, Judge.

20          THE COURT:  This way we'll be sure, you know, belts

21  and suspenders.

22          MR. POLLACK:  Thank you.

23          (Matter adjourned to May 1, 2023, at 9:30 a.m. )

24

25