```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,              :
                                       :        MEMORANDUM & ORDER
           -against-                   :        20-cr-219 (DLI)
                                       :
PAUL BELLOISI,                         :
                                       :
                       Defendant.      :
-------------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

On May 2, 2023, a jury convicted Defendant Paul Belloisi ("Defendant") of: (1) conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One); (2) conspiracy to import cocaine in violation of 21 U.S.C. §§ 963, 952(a), and 960(a)(1) (Count Two); and (3) conspiracy to import cocaine in violation of 21 U.S.C. §§ 952(a) and 960(a)(1) (Count Three). *See*, Verdict Sheet, Dkt. Entry No. 84. He was continued on bond pending sentencing, but later remanded for repeatedly violating the conditions of his release. *See*, Trial Tr. at 1000:1-4; Detention Order, Dkt. Entry No. 120 ("Detention Order"). On September 6, 2024, Defendant was sentenced to 108 months' imprisonment and three years' supervised release, with conditions, on each count, all terms to run concurrently with each other. *See*, Am. Judgment, Dkt. Entry No. 131. Defendant timely appealed his convictions to the Second Circuit. *See*, Notice of Appeal, Dkt. Entry No. 134.

Before the Court is Defendant's motion for release pending appeal pursuant to 18 U.S.C. §§ 3143(b) and 3145(c). *See*, Def.'s Mot., Dkt. Entry No. 147 ("Mot."). The Government opposed. Opp'n Br., Dkt. Entry No. 149 ("Opp'n"). Defendant replied. *See*, Reply Br., Dkt. Entry No. 151 ("Reply"). The Court held oral argument on the motion on July 10, 2025 and

reserved decision.[1]  *See*, July 10, 2025 Arg. Tr. ("Arg. Tr.").  After the Court heard the parties' oral arguments on the motion and, as Defendant had included his opening appellate brief with his release motion papers, the Government filed its response to Defendant's appeal for the Court's review in connection with the instant motion.  *See*, Gov't Appellate Br., Dkt. Entry No. 154.  The Court granted Defendant's application for leave to reply and Defendant filed its reply on August 8, 2025.  *See*, Def.'s Reply, Dkt. Entry No. 157.

For the reasons set forth below, Defendant's motion is denied.

## BACKGROUND

The Court assumes the parties' familiarity with the background and procedural history of this case, which is set forth in detail in the Court's opinion denying Defendant's motion for vacatur of the verdict, judgment of acquittal or for a new trial, which is incorporated herein by reference.[1]  *See*, Op. & Order, Dkt. Entry No. 128 ("Rule 29 Order").

After the jury rendered its verdict, and over the Government's objection, the Court permitted Defendant to remain at liberty under the existing bond conditions, which included frequent drug testing.  *See*, Trial Tr. at 1000:1-4; Arg. Tr. at 31:3-24.  However, Defendant repeatedly violated his bond conditions while awaiting sentencing.  On June 29, 2023, Pretrial Services referred Defendant to an outpatient drug treatment program based on his disclosure that, because of the verdict, he had feelings of depression and was contemplating illicit drug use.  In October and December 2023, Defendant tested positive for drug use, specifically, cocaine (four times), MDMA, and lorazepam (which he is not prescribed).  *See*, Jan. 18, 2024 Electronic Order.  Consequently, on the eve of sentencing, Defendant was admitted to a residential drug treatment

---

[1] The Court also adopts the Government's recitation of facts set forth in its opposition as it is consistent with the Court's recollection of the evidence admitted at trial.  *See*, Opp'n at 1-6.

2

facility, which he left, on his own, "against clinical advice" and in direct violation of the Court's clear admonition that he could not leave the program without Court authorization. *See*, Mar. 7, 2024 Electronic Order. Defendant left the program after he had been reprimanded for hiding contraband medication in his room. *Id.* Defendant then was admitted to a different facility with the clear admonition that an arrest warrant would issue for him if he left the program without permission again. However, Defendant again, despite the clear admonition from the Court, was discharged from the program because he possessed illegal controlled substances, and, as a result, an arrest warrant was issued. *See,* Pretrial Services Violation Memo and Warrant Request, Dkt. Entry No. 117. Defendant was returned on the warrant on May 10, 2024 and appeared before the Hon. Lee G. Dunst, U.S.M.J. of this Court, who entered a permanent order of detention. from which he was terminated for harboring contraband controlled substances. *See*, Detention Order; Minute Entry, Dkt. Entry Nos. 119, 120.

## **DISCUSSION**

Detention is mandatory for persons who have: (1) filed an appeal; (2) been found guilty of drug offenses carrying maximum sentences of ten or more years; and (3) been sentenced to a term of imprisonment. 18 U.S.C. § 3143(b)(2) (citing 18 U.S.C. § 3142(f)(1)(C)). However, 18 U.S.C. § 3145(c) creates an exception to § 3143(b)(2). *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991). It permits the release of mandatory detainees who meet the requirements for release set forth in § 3143(b)(1) and clearly show that there are exceptional reasons why their

detention would be inappropriate. *See*, 18 U.S.C. § 3145(c). Pursuant to § 3143(b)(1), Defendant must demonstrate:

> (1) by clear and convincing evidence that he is neither likely to flee, nor pose a danger to the safety of other individuals or the community; and
>
> (2) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in: (i) reversal; (ii) an order for a new trial; (iii) a sentence that does not include a term of imprisonment; or (iv) a reduced sentence to a term of imprisonment less than the total amount of time already served plus expectation of the appeal process.

18 U.S.C. § 3143(b)(1). Only if the Court decides that Defendant meets § 3143(b)(1)'s "threshold requirements" can it evaluate whether Defendant has demonstrated exceptional circumstances making detention inappropriate. *DiSomma*, 951 F.2d at 496. Here, it is undisputed that Defendant is subject to detention pursuant to § 3142(b)(2). Therefore, to determine whether Defendant can be released pending appeal, the Court first must decide whether he meets § 3143(b)(1)'s threshold requirements. He does not.

First, Defendant has failed to prove by clear and convincing evidence that he is not a flight risk, given his repeated violation of drug treatment program rules by retaining illegal substances while there and repeated abscondment from the residential drug treatment programs to which he was mandated upon pain of being detained without bail. *See*, Detention Order at 2-3 ("finding "by clear and convincing evidence that no condition or combination of conditions of [Defendant's] release will reasonably assure [Defendant's] appearance as required"). Additionally, the Court finds that Defendant fails to show by clear and convincing evidence that he is not a danger to the community. Defendant's willingness to obtain illicit drugs in the first instance as well as to deceive the rehabilitation treatment programs' employees and manipulate their medication protocols by harboring contraband controlled substances in an environment where fellow patients are working

4

to overcome substance abuse issues indicates that he poses a danger to others. *See*, Detention Order at 2-3 (finding "by clear and convincing evidence that no condition or combination of conditions of [Defendant's] release will reasonably assure the safety of any other person and the community" due to his "repeated failure to comply with the conditions of his release re: drug testing, evaluation, and treatment").

Moreover, there is no evidence that Defendant has engaged in any drug treatment programming while in custody. *See*, Arg. Tr. at 29:23-25. Based on his history of drug use, and failure to comply with the rules and protocols for treating his addiction, there is a likelihood that he will continue to conduct himself in that manner should he be released. Any attempt by Defendant to purchase illegal drugs or continue to use them in the community would exacerbate the existing drug trafficking problem in this District. Accordingly, Defendant has failed to show by clear and convincing evidence that he does not pose a danger to others or the community given the severity of the crimes for which he was convicted, coupled with his repeated violations of the conditions of his release before sentencing. *See*, *United States v. Abuhamra*, 389 F.3d 309, 320 (2d Cir. 2004) ("After verdict . . . the government's safety interest is magnified . . . [t]he fact that a person has been found, beyond a reasonable doubt, to have committed a criminal activity certainly indicates dangerousness.") (citation omitted).

Even if the Court were to find that Defendant is not likely to flee or pose a danger to the safety of any other person or the community if released, the Court nevertheless finds that Defendant has failed to raise a substantial question likely to result in reversal or an order for a new trial.[2] *See*, 18 U.S.C. § 3143(b)(1)(B). Defendant argues that his appeal presents "at least a 'substantial question' as to whether there is sufficient evidence to sustain the jury's verdict on all

---

[2] It is undisputed that the appeal is not for the purpose of delay. *See,* Mot. at 1.

5

three counts." Mot. at 14. Specifically, he asserts that the Government set forth no evidence at trial that could support the jury's finding that Defendant knew he was involved in a conspiracy to import cocaine, as opposed to other contraband, such as illegal cigarettes or counterfeit currency. *Id.* at 13-14. The Government counters that it presented sufficient direct and circumstantial evidence that could support that finding. Opp'n at 7-8. The Court concurs with the Government.

A "substantial question" of fact or law "is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that could very well be decided the other way." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (citations omitted). The question raised on appeal must be "so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Id.* (citations omitted). Defendant carries the burden of persuasion. *Id.*

Here, Defendant has failed to persuade the Court that he has raised a substantial question on appeal that is likely to result in reversal or a new trial. As an initial matter, the Court twice rejected this argument when Defendant previously raised it. *See*, Trial Tr. at 843:8-848:11 (denying Defendant's motion for acquittal); Rule 29 Order. As explained in the Rule 29 Order, "[t]he evidence adduced at trial regarding Defendant's knowledge and intent was voluminous and sufficient to support the jury's finding beyond a reasonable doubt." Rule 29 Order at 16.[3]

The instant motion has not changed the Court's view. Defendant relies on *United States v. Samaria*, 239 F.3d 228 (2d Cir. 2001), *United States v. Friedman*, 300 F.3d 111 (2d Cir. 2002),

---

[3] In its appellate response, the Government argues that it "does not have to prove that the defendant knew the specific nature and amount of the controlled substance for the defendant to be convicted of a violation of the Controlled Substances Act," pursuant to *United States v. Andino*, 627 F.3d 41 (2d Cir. 2010). Def.'s App. Br., Dkt. Entry No. 154-1 at 25. However, as Defendant rightly contended in its Reply, this argument is inapposite. *See,* Def.'s Reply, Dkt. Entry No. 156 at 2. In *Andino,* the defendant admitted that he knew he was transporting a package containing drugs, but maintained that he believed he was transporting marijuana rather than cocaine. *See*, *Andino*, 627 F. 3d at 42. Here, Defendant denies that he knew he was retrieving drugs from the aircraft at all. Instead, he argues that he knew he was "involved in a smuggling conspiracy involving" anything from "cocaine [to] untaxed cigarettes [to]

6

and *United States v. Lorenzo*, 534 F.3d 153 (2d Cir. 2008) to support his argument that a defendant can play a role in an illegal conspiracy without knowing the object of that conspiracy. *See*, Mot. at 10-14; Reply at 1-9. However, *United States v. Anderson*, decided years after the cases Defendant cites, articulates clear guidance for courts determining whether sufficient evidence was adduced at trial to support a jury's "knowledge inference." 747 F.3d 51, 66 (2d Cir. 2014).

In *Anderson*, the Second Circuit clarified that it has "previously and repeatedly endorsed" juries' inferences that: (1) "drug dealers would be very unlikely to confide hundreds of thousands of dollars' worth of drugs to the sole control of a person who was not a trusted member of the conspiracy"; and (2) "a trusted member of the conspiracy may reasonably be expected to have knowledge of the nature of the conspiracy, *i.e.*, distributing illegal drugs." *Id*. Application of the "knowledge inference" is "heavily fact specific, and typically permit[s] drawing the proposed inference in the context of numerous factors in addition to the value of the goods in question." *Id.* at 68. Facts that could support this inference include that the purported conspiracy member was entrusted to have sole custody of hundreds of thousands of dollars' worth of drugs. *Id.*

The *Anderson* court explicitly distinguishes *Lorenzo* on the grounds that, in *Lorenzo*, the government failed to provide sufficient evidence to support the jury's inference that the defendant was a trusted member of the conspiracy. *Anderson*, 747 F.3d at 68-69. The defendant's association with and delivery of cash to others engaged in a crime did not support an inference of trust. *Id. Samaria* is distinguishable on the same grounds. *See*, 239 F.3d at 234 ("[The government] presented no evidence of any other contact or connect" between the defendant and the conspirators,

---

contraband gold finches." Def.'s Reply, Dkt. Entry No. 156 at 2 (citation omitted). Therefore, *Andino* is distinguishable, and the arguments raised in the Government's appellate brief do not alter this Court's analysis.

7

other than when he transported them in his taxi). *Friedman* is distinguishable factually because, in that case, the defendant was not entrusted with any contraband. *See*, 300 F.3d at 126.

Here, the Court finds that unlike in *Lorenzo*, *Samaria*, and *Friedman*, the jury reasonably inferred that Defendant was a trusted member of a drug conspiracy and, thus, could be expected to know the "nature of the conspiracy." First, Defendant does not dispute the existence of a conspiracy to import, possess, and distribute the cocaine found in the avionics compartment of a plane traveling from Montego Bay, Jamaica to New York City. Arg. Tr. at 16:20-21. Indeed, it is beyond cavil that someone put the cocaine there initially. Second, Defendant does not and cannot dispute that "hundreds of thousands of dollars' worth" of cocaine was found in that compartment. *See*, Tr. at 365:10-11.

Third, the totality of the evidence indicates that the cocaine was "confide[d] to" Defendant. He entered the avionics compartment of the plane even though he was not authorized to be at the terminal, was assigned to work elsewhere in the airport, and did not have clearance to be on or in proximity to aircrafts arriving from international flights, much less in the avionics compartment of such flights. *Id*. at 74:1-77:13, 313:2-317:24, 319:8-321:4. Defendant was the only person to enter the compartment after the plane landed from Jamaica. *Id.* at 68:21-72:13  The bricks of cocaine found in the compartment were not concealed, for example, in luggage or a box. *Id.* at 43:2-18. While in the compartment, Defendant came into contact with and lifted at least one "sham" brick placed there by law enforcement, tripping a transponder. *Id.* at 16:18-19, 70:3-73:19. When Defendant approached the compartment, he was wearing an American Airlines jacket with slits cut into the lining and had an empty tool bag in his vehicle. *Id.* at 355:22-356:20, 360:5-363:12. Moreover, he made false exculpatory statements to the law enforcement agents, when apprehended. *Id.* at 74:1-77:13. Notably, Defendant stipulated that he knew he was a member

8

and acted in furtherance of an illicit conspiracy when he entered that compartment to retrieve something. *See*, Arg. Tr. at 16:21-17:10, 21:6-20; Mot., Ex. A, Def-App.'s App. Br. at 30, 32-33. Collectively, this evidence could lead a jury to infer reasonably that Defendant's co-conspirators entrusted him to retrieve the cocaine.

Finally, the drugs transported in the avionics compartment would have been in Defendant's "sole control" after he retrieved them and while he transported them at least through, if not also outside of, the airport. The evidence demonstrates that, instead of working at his assigned spot in the airport, Defendant spent the day of his arrest surveilling the plane after it landed and approached the avionics compartment alone, wearing a jacket in which he had cut slits and bringing an empty tool bag. Tr. at 355:22-356:20, 360:5-363:12, 450:25-462:5. No evidence was presented to show that he was accompanied by anyone else to retrieve and move the contraband off the plane and through the airport. The fact that conspirators entrusted hundreds of thousands of dollars of cocaine to Defendant's sole custody and control, particularly in a highly secure environment like an airport, "provides important evidence of a trust relationship between [D]efendant and other conspirators." *Anderson*, 747 F.4d at 69. Accordingly, it was proper for the jury to infer that Defendant, a trusted member of the conspiracy, knew "the nature of the conspiracy," *i.e.*, to import, possess, and distribute cocaine. *Id.* at 66. As the Second Circuit applies an "exceedingly deferential standard of review" to a defendant's motion to overturn a jury verdict on sufficiency grounds and must "uphold [a] conviction if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," it is unlikely that Defendant's appeal will result in reversal or a new trial. *Id.* at 59.

The Court need not address whether Defendant has shown exceptional reasons that his detention would be inappropriate because it finds that Defendant fails to meet § 3143(b)(1)'s

9

threshold requirements. *DiSomma*, 951 F.2d at 496. Even if the Court were to consider this prong, Defendant cannot prevail because he neither raises an "unusual factual or legal question" nor a "remarkable circumstance" accompanying a substantial question of law on appeal. *Id.* at 497. Indeed, the issue Defendant raises on appeal, whether the Government presented evidence sufficient to support the jury's knowledge inference, has been litigated extensively within this circuit. *See*, *Anderson*, 747 F.3d at 66-69 (collecting cases); *contra*, *DiSomma*, 951 F.2d at 487-98 ("We are confronted here with a most unusual factual and legal situation, one that fully justifies the exercise of discretion by the district court."). Moreover, unlike the argument raised on appeal in *DiSomma*, the argument Defendant raises on appeal here is not determinative of mandatory detention pursuant to the Bail Reform Act. *See*, *DiSomma*, 951 F.2d at 497-98 ("The statute of conviction requires proof of violence, and the existence *vel non* of that element is said to present a substantial question on appeal. It is that very violence that mandates detention under the provisions of the Bail Reform Act."). While Defendant's knowledge that the contraband was cocaine is relevant to his conviction, he would have been subject to detention pursuant to the Bail Reform Act had the contraband in fact been any controlled substance enumerated in the Controlled Substances Act or the Controlled Substances Import and Export Act.

## CONCLUSION

For the foregoing reasons, Defendant's motion is denied in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
      September 16, 2025

                                                /s/
                                      DORA L. IRIZARRY
                                United States District Judge